————o————

MARY NORTON Plaintiff in Error, vs. MARTIN ITTNER, et al., Defendants in Error.

1. *Negligence—Question for jury, when.*—In many cases where the facts are undisputed, the question of negligence is one of law to be passed upon by the court, but,where they are disputed or admit of different constructions or inferences, the question should be left to the jury.

### Error to St. Louis Circuit Court.

*A. J. P. Garesche*, for Plaintiff in Error.

*H. D. Laughlin*, for Defendants in Error.

NAPTON, Judge, delivered the opinion of the court.

We are of opinion that the evidence in this case was sufficient to take the case to the jury.

The deceased was a hod carrier in the employment of defendants, and was killed whilst crossing a gangway, constructed by the defendants or their agents, from the third story of one house to the third story of another. This gangway,which was forty feet from the ground, was originally a very secure one, constructed of joists with plank on the top, and wide enough and strong enough to enable the carriers of mortar and brick to pass over safely. On the day of the accident, whilst the hod carriers were at dinner, the carpenters having use for these joists removed them and substituted two planks,

one an old "header," and the other a pine board. Crane, who was a witness in the case, was the first of the workmen to undertake the passage of this new gangway, but, as he stepped on the board, he heard it crack, and then, apprehending its insufficiency as a support, he doubled the plank, or placed the board over the "header," and thus walked over safely. On his return he met the gang, at the head of which was Norton (the deceased), and heard the supervisor or foreman call out "Hurry men, Hurry!"—and he halloed to the men—"watch out boys—that's a dangerous place." Norton, who was ahead and supposing the danger referred to was the width of the platform (which was only 9 inches), restored the two planks to their former position, side by side, and stepping on the board, which had a knot in the middle, was precipitated to the ground and killed.

There is no doubt that negligence is in many cases a question of law to be determined from the facts agreed or found by a jury;—but where the facts are disputed, or the undisputed facts admit of different constructions and inferences, the court may properly leave the matter to the jury, and so this court held in Wyatt vs. Citizens Railw. Co., 55 Mo., 485; and such is the recent decision of the Supreme Court of the United States in Sioux City & Pa. R. R. Co. vs. Stout, reported in Central L. J. No. 17. Negligence may be asserted as a matter of law, where there has been a breach of law, or a city ordinance, as in Karle vs. K. C., St. Jo. & C. B. R. R. Co., (55 Mo., 476.) But where the facts in evidence may, in the judgment of sensible men, lead to very different conclusions as to whether they establish want of care or contributory negligence, the jury is the tribunal selected to determine the question. Therefore this court held, in the cases above referred to, that though a court might very properly declare as a matter of law, that, if one voluntarily jumps from a train of railroad cars in motion, the act is necessarily attended with such risks as to throw all the responsibility of the result on the actor; yet, at the same time where a young man jumped from a street car, drawn by horses, though the car was in

rapid motion, at the instance of the conductor who refused to stop the car, it was error for the court that tried the case to pronounce it negligence *per se*, and that it should have been left to the jury to say, whether under the circumstances it was negligence or not on the part of the passenger. The question of negligence depends on the circumstances of each case.

In the present case there was a double risk, between which the deceased was called upon suddenly to decide, and he unfortunately selected the most dangerous. He might have understood the warning of Crane (the witness), as directed to the narrowness of the gangway, and so understanding the warning, would naturally attempt to remove this danger by separating the two planks. Whether his doing so was an act of negligence, was a matter of inference from the facts which ought to have been left to the jury. It was undoubtedly the duty of the defendants to furnish their workmen a safe way of transit from one house to another at such a height above ground, and whether the gangway, as it was found after the workmen returned from dinner, was composed of two planks, laid side by side, or of one plank on the top of the other, it is not impossible that sensible men might regard it, in either form, as unsafe, and not prepared with a proper regard for the lives of those who had to pass over it.

We have not been able to perceive the motive of plaintiff in reading the defendant's answer as evidence—but this does not alter the character of the question before this court. It was offered as evidence, and what weight it was entitled to was not a matter of law for the court.

We shall set aside the non-suit and reverse the judgment for a trial. The other judges concur, except Judge Adams.

Dissenting opinion by Judge ADAMS.

This was an action by plaintiff to recover of defendants damages for the loss of her husband, whose death was alleged to have been occasioned by their negligence whilst he was in their service.

The defendants were the contractors for certain brick buildings, and the plaintiff's husband acted as one of their hodmen in carrying brick and mortar to the brick-masons. In crossing on a staging forty feet high, a piece of plank with a knot hole in it broke at the hole, and the deceased fell to the ground, which occasioned his death. The issues raised by the pleadings were negligence on the part of defendants, and contributory negligence on the part of the deceased.

The court instructed the jury, that upon the case, as made by the plaintiff, she was not entitled to recover. The plaintiff took a non-suit with leave to move to set it aside, which motion was made and overruled, and a final judgment rendered in favor of defendants, which was affirmed at General Term.

The only material evidence bearing on the issues was as follows:

William Crane testified: "I am a laborer; know the defendants; they constitute the firm of Ittner Brothers; I was at work for them as a laborer when this accident happened. I knew the deceased, John Norton; we had had a good scaffolding of two good planks, joists which lying side by side made a walk about twenty-eight inches wide, but they had been removed while we were at dinner. In their places had been put an old header and a pine plank, I don't know by whom. The joists had been taken by the carpenters who needed them in the building. I was the first to pass over these new ones, and as I stepped on it they were lying side by side, and I heard one of them crack, so I doubled them, putting one on top of the other; and this left a gangway about nine inches wide, about forty feet from the ground. There was no guard to it. It required care because it was so narrow. I then crossed over it; afterwards returned, and just as I got inside I met the gang coming which Norton was leading. I didn't stop, as some one just at the moment halloed "hurry, men! hurry!" when I went past them shouting "look out, boys! that's a dangerous place." I meant by its width, but gave no explanation of what I meant—said nothing else than just to look out because it was a dangerous place. Norton opened the planks and laid

them side by side, and the plank broke—he fell and was killed. I believe they were strong enough double, but not single, because the pine blank was unsound. The walk was dangerous because so narrow, but a man could safely pass over it, exercising care, as I proved myself, because I crossed it going and coming. The gangway was built by men under the orders of the boss, as I supposed. I have been a laborer for the past eighteen years, and for the last six or seven in this city. I have never known the laborers to furnish the plank, and supposed it was the business of the boss to do it."

Plaintiff also read in evidence original answer of defendants, in these words:

"Mary Norton, Plaintiff, vs. Martin Ittner, John Ittner and Anthony Ittner, Defendants. In the Circuit Court of St. Louis county. October Term, 1870.

Defendants for answer, come and aver that they have no sufficient knowledge or information to form a belief if plaintiff was the lawful wife of John Norton, deceased.

They deny that they constructed the staging mentioned in the petition, or that they had anything to do with the construction thereof, but they admit that a staging was constructed at the building specified by the employees of defendants, whose duty it was to use the same in carrying materials to be used in the erection of said building, of whom the said Norton was one, and whose duty it was to see that the same was perfect and secure before using the same. They aver, that, after said staging had been constructed and used, the said Norton altered and changed the same, that, if it was unsafe and insecure, such alteration and changing so made it, that such alteration and changing caused the accident that resulted in the death of said Norton, and that he did not exercise due care and caution in the premises. They deny that they constructed said staging so carelessly, negligently and insecurely, that said John Norton, while in the usual course of his employment, and where he might lawfully be, fell through said staging without any fault on his part, and was precipitated from the height of seventy feet, or that their em-

ployees so did except the said Norton. They deny that the death of said Norton resulted from, and was occasioned by, any neglect or default of these defendants, or from any neglect or default of their agents, servants or employees in the construction of said staging, for which they are responsible, or by reason of any other neglect or default for which they can be held responsible, but they aver that the want of proper care and caution on the part of said Norton contributed to and caused his death. They deny that by the provisions of any statute they forfeited and became liable to pay the plaintiff the sum of five thousand dollars, or any other sum. Therefore they ask judgment to go hence with their costs.

By C. G. Mauro & Laughlin, their attorneys."

It is very obvious from this statement that the plaintiff had no standing in court. It is manifest that the death of her husband was occasioned by his own immediate act in separating the planks which formed the staging, and walking on the unsound plank. If it was not his business to see that the staging was all right, he certainly had no authority to alter it, and thus render it still more dangerous.

But the answer of the defendants to the original petition, which was read in evidence by the plaintiff without objection, settles this controversy. Whether a pleading can be read as evidence, if objected to, it is unnecessary to consider. For the present inquiry it is sufficient, that this answer was read as evidence without objection, and must be taken as a part of the plaintiff's case. It proves that the defendants were without fault, and that the deceased was the proximate and immediate cause of his own death.

In my opinion this judgment ought to be affirmed.