WALKER D. HOKE, Respondent, *v.* ST. LOUIS, KEOKUK, AND NORTHERN RAILWAY COMPANY, Appellant.

#### March 21, 1882.

1. That one is a vice-principal for a certain purpose does not make him an *alter ego* of the master when acting in another capacity.

2. A "road-master" of a railroad company, having superintendence of the "road department," is not a vice-principal in such a sense as to render the company liable for his negligence, when he assumes to act as a mere "boss" or "foreman of a gang."

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Reversed and remanded.*

GEORGE F. HATCH and T. F. McDEARMON, for the appellant: The act of the road-master in this case, was the act of a co-laborer or fellow-servant of the respondent, and not as vice-principal or *alter ego* of the appellant. — *Brickner* v. *Railroad Co.*, 2 Lans. 506; *Harper* v. *Railroad Co.*, 47

Mo. 567; *Brothers* v. *Carter*, 52 Mo. 372; *Marshall* v. *Schricker*, 63 Mo. 308.

THEODORE BRUERE and NAT. C. DRYDEN, for the respondent: The "road-master," through whose negligence the injury was caused, had superintendence of a department of the business of the appellant, with delegated authority to employ and discharge hands, and was not, therefore, a fellow-servant of the respondent, a common laborer, but was an *alter ego*, or vice-principal, of the appellant. — *Hamilton* v. *Railroad Co.*, 3 Mo. App. 601; *Devany* v. *Iron Works*, 4 Mo. App. 243; *Gormly* v. *Iron Works*, 61 Mo. 494; *McGowan* v. *Railroad Co.*, 61 Mo. 528; *Lyden* v. *Marion;* 3 Mo. App. 601; *Whalen* v. *Church*, 62 Mo. 326.

BAKEWELL, J., delivered the opinion of the court.

This was an action for damages for an injury alleged to have been done to respondent by appellant and its employees whilst engaged in loading a wrecked car upon a train of cars. There was a verdict and judgment for plaintiff for $10,000.

The petition states in substance that on August 15, 1879, plaintiff was working in defendant's employ as a laborer, acting under Michael Fitzgerald, an agent and servant of defendant, who was superintending or "bossing" the body of laborers of whom plaintiff was one. Plaintiff was acting as a laborer under the direct supervision and control of John Tracey, one of the controlling officers, to wit: the road-master of defendant's road. Fitzgerald was present as an assistant of Tracey in superintending plaintiff and other laborers in loading a flat-car, whose wheels and trucks had been broken off, upon a wrecking train, both of which were owned by defendant, and being controlled by defendant's agents. The wrecking-train was composed of an engine and flat-cars, and had been cut in two, some of the cars attached to the engine being south of the wrecked flat, and other cars standing still, north of the wrecked car. The flat-

car had been lifted upon the track of defendant's road, where the train was cut in two, and the north end of the wrecked flat-car had been lifted up and placed on the first car in the wrecking train north of the wrecked flat, and the other laborers and plaintiff, under the control and supervision of Tracey and Fitzgerald, were attempting to place the south end of the wrecked flat on the first car of the wrecking-train immediately south of the wrecked flat, so that the first car on the south might be pushed under the wrecked flat. This flat was held up above the level of the first flat south, by levers resting on the floor of the first flat south, the north ends of which levers extended a few inches under the south end of the wrecked flat ; and, while the wrecked car was held up by the levers, plaintiff was ordered by Fitzgerald and Tracey to go under the flat and push out one of the levers. He obeyed the order, and whilst pushing at the lever, Tracey, intending to signal the engineer to move the engine north, by carelessness and mistake, signalled to move south, in consequence of which the engine was moved south, the first flat south was moved from under the levers, and the first flat fell on plaintiff, crippling him for life.

There were also allegations as to the insufficiency of the machinery, but these were not insisted upon, and all testimony as to them was taken from the jury by an instruction given at plaintiff's instance.

There was evidence to sustain the allegations of the petition. There is a conflict of testimony as to what signal Tracey gave ; but all agree that if Tracey gave the signal which plaintiff's witnesses say he gave, he gave the wrong signal, caused the cars to move the wrong way, and thus occasioned the accident.

Besides one instruction as to the measure of damages, and the instruction mentioned above, the following were the instructions upon which the case was given to the jury. The first two were given at the instance of plaintiff, the next

three at defendant's instance, and the last by the court, *proprio motu:*—

1. "If the jury find from the evidence that one John Tracey was the road-master of defendant's railroad, and as such road-master was the superintendent for the defendant of the work of removing and loading up the wreck in question, and had entire control and charge thereof, with power to employ the section foreman and section hands, and that the plaintiff was subject to his orders and directions, then the jury are instructed that said Tracey was not a fellow-servant with the plaintiff, and that said Tracey's acts and conduct, in connection with said work, were and are the acts and conduct of the defendant, so far as this case is concerned."

2. "If the jury believe from the evidence that the plaintiff, while employed by defendant as a section hand, on or about the fifteenth day of August, 1879, in the discharge of his duty as such section hand, was ordered by his superior to step under the wrecked car and push out a certain lever, and that in the discharge of said duty, and in obedience to said order, plaintiff stepped under said car, and while engaged in attempting to carry out said order, the defendant, through negligence or mistake, and without warning to the plaintiff, gave to the person in charge of the engine, a signal to move said engine and the cars attached to it southward, when the proper signal would have been to move the engine and cars attached to it northward, and that in obedience to said signal the person in charge of the engine moved said engine and cars attached to it southward, and that in consequence thereof said wrecked car fell upon and injured the plaintiff, the verdict must be for the plaintiff."

3. "If the jurors believe from the evidence that at the time plaintiff was injured he was an employee of the defendant, and engaged with a number of other men in loading a wrecked train on a flat-car attached to an engine on defend-

ant's track, and that John Tracey, defendant's road-master, gave a signal to the engineer in charge of the engine to move his engine northwardly, and that the engineer, instead of moving his engine northwardly, moved southwardly, and that the plaintiff's injury was caused by the southward movement of the engine and the cars thereto attached, the plaintiff cannot recover, and they must find for the defendant."

4. " Even though the jury may believe from the evidence that plaintiff's injury was caused by the southward movement of the train by the engineer in charge, in obedience to an order of John Tracey, the defendant's road-master, so to do ; yet, if they also believe from the evidence that the said engineer had reasonable grounds to believe that this was a wrong signal, and that obedience to this signal would cause damage or injury, the plaintiff can't recover, and the finding must be for the defendant."

5. " If the jury believe from the evidence that prior to the happening of the accident which caused the injury to plaintiff, the defendant's road-master, John Tracey, gave to the men employed in loading the wrecked car on another flat-car, warning that they must get out of the way, that he was going to move the train, or words to that effect, and that said warning was given in sufficient time before the moving of said train for said men to get out of the way, and loud enough for the men to hear said warning ; and shall further believe that plaintiff, in the exercise of reasonable care, could have heard said warning, and failed to get out of the way, then the defendant is not liable in this action, and the verdict must be for defendant, unless the jury further find, that said Tracey saw that plaintiff was in danger in time to have prevented the injury, and failed to make proper precaution to prevent said injury."

6. " The court instructs the jury that a servant of a corporation who is injured by the negligence or misconduct of his fellow-servant can maintain no action against the

master for such injury, and that this rule applies in all cases alike, without regard to the degree of subordination in which the different servants or agents may be placed with reference to each other; and if the jury find from the evidence that plaintiff, Tracey, and Fitzgerald were, at the time of the injury complained of, all employees of defendant, engaged in a common employment in the service of defendant, then the verdict of the jury must be for the defendant, unless the jury should also find and believe from the evidence that the road-master (Tracey) had sole charge and control of the work as superintendent thereof, with power to employ and discharge the hands employed, and that the plaintiff was at that time subject to his orders, and that the injury complained of was caused by his (said Tracey's) negligence.''

Defendant asked the court to instruct the jury, that if plaintiff and Tracey and Fitzgerald were fellow-servants of defendant, all engaged at a common employment at the time of the accident, and the injury was caused by Tracey's negligence in giving a wrong signal, defendant is not liable; and also that, if Tracey was road-master of defendant, with authority to employ and discharge hands, yet, unless plaintiff was injured by some negligence of Tracey in the employment of unfit men, or the providing of unsafe appliances, the verdict must be for defendant. These declarations of law were refused.

A mere foreman of a gang of laborers is simply a fellow-servant with those with whom he is working for the same master, and to recover against the master for the negligence of such a foreman of a gang, the fellow-servant injured must show that the foreman whose misfeasance occasioned the injury was incompetent, and that the common master was guilty of negligence in employing or retaining him.

Tracey was road-master, and it appears that, as such, he had power to employ and discharge hands. But it does not appear that the injury complained of arose from any

negligence of his in the matter of employing hands, or in any matter in which he replaced the master, or in any department of the business in which he was vice-principal or *alter ego* of the master.

In *Devany* v. *Iron Works* (4 Mo. App. 242), the accident was caused by the careless construction of a scaffold for unloading coke-barges, put up by one who, though a fellow-servant of the person injured, had complete and independent control of the work of that department of defendant's business which consisted in unloading coke-barges, and we held there that the negligence was not that of a fellow-servant in such a sense as would prevent a recovery. But the rule that a servant who is injured by the misconduct of his fellow-servant cannot maintain an action against his master for the injury, is not altered by the fact that the servant guilty of misconduct is a servant, whose directions the one injured was bound to obey. *Marshall* v. *Schricker*, 63 Mo. 308.

The master is bound to see that proper machinery is employed, that incompetent servants are not retained to endanger the life of their fellow-workmen; and, when the master abdicates in favor of a middle-man, and delegates to him the performance of the duties to his servants which the master is bound to perform, the master is as much liable for what his middle-man does, or omits, in the matter of these duties, as if it were the master himself who is doing them; and, as to these matters, the middle-man is regarded, not as a co-servant with the other employees, but as the master himself. But as to other matters, the middle-man is a co-servant, and does not cease to be merely a co-servant because, in the progress of any job, it may be his duty to direct how it is to be done.

" Where a master," says Wharton (chap. 1, sect. 339), " places the entire charge of a distinct branch of his business in the hands of an agent, exercising no discretion and no oversight of his own, it is manifest that the neglect of

the agent of ordinary care in supplying and maintaining suitable instrumentalities for the work required, is a breach of duty for which the master should be held answerable. The negligence of the agent with such powers becomes the negligence of the master." But, just as the tortious act of a servant to make the employer liable must pertain to the particular duties of that employment, so the wrongful act of a vice-principal or *alter ego* must be an act done by him as vice-principal. The fact that he is vice-principal in one department of the business, does not make all his acts the act of a vice-principal; if he accidentally injures a fellow-servant with his pick whilst digging, he is not an *alter ego, pro hac vice;* and we see no reason why, because one who is giving directions to a gang engaged in removing a wreck from the rails, is also road-master and authorized to engage and discharge hands, the company should be any more liable for the evil consequences of a false signal given by him than they would be in the case of any ordinary " boss " or foreman. If he is acting, in giving the signal, not as road-master, but as director, for the moment, of a particular company engaged in removing a wrecked car, he would seem to be acting, not as an executive officer of the railroad corporation to whom some of the executive duties of the corporation have been expressly delegated, but purely as a co-laborer and co-employee of the men removing the wreck. For the faithful performance of the executive duties of any department of the business of the corporation, the corporation is liable, though it has delegated those duties as it must necessarily delegate them; but because the delegate of the corporation not exercising the duties of the master of the faithful performance of which the master is liable to his employees, not engaged in employing servants, selecting or putting up machinery, or doing any other executive act as vice-principal, but directing other laborers as co-laborers with them, is guilty of an act of carelessness, it does not follow that the master is liable to a co-servant for

the consequence of such negligence. "A superintendent may also labor, like other laborers, and may be, in that respect, a co-laborer, and his negligence as such co-laborer, when acting only as a laborer, may be likened to that of any other," to use the language of Judge Potter, in *Brickner* v. *Railroad Company* (2 Lans. 506), cited by the supreme court of this state with approval in *Harper* v. *Railroad Company* (47 Mo. 567).

The evidence as to all this, goes no further than the statements of the petition that Fitzgerald, a servant of defendant, was "bossing" the laborers, and acting as a laborer under the personal supervision and control of Tracey, who was the road-master of defendant's road, except that it tends to show that the road-master had full power to employ and discharge all hands in the road department. The defendant could only be liable on the theory that the road-master acted as vice-principal or *alter ego* of the corporation in signalling the engineer to move his engine. We see nothing from which this can be inferred. Instruction number two proceeds upon this theory, and we think it was erroneous and unwarranted by any evidence in the case. We think that the instructions asked by defendant and set out in the course of this opinion as refused, should have been given.

The judgment is reversed and the cause remanded. Judge LEWIS is absent; Judge THOMPSON concurs.