HOKE, *Appellant*, v. THE ST. LOUIS, KEOKUK & NORTHERN RAILWAY COMPANY.

1. **Negligence** : RAILROAD : VICE-PRINCIPAL. Where a road master of a railroad, having general superintendence of its track, while engaged in superintending and directing the removal of a wrecked train, but not in the manual work of removing a wreck, gives a wrong signal to the engineer of a train assisting in removing the wreck, whereby a laborer engaged in the work of removal is injured, the railroad is liable therefor. (Following *Moore v. Railroad,* 85 Mo. 588).

2. **Fellow Servant** : VICE-PRINCIPAL. The road master was not a fellow servant of the one injured in the transaction in which the injury was received, but represented the company therein as vice-principal, or *alter ego*, and his negligence in the matter causing the injury was that of the company.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*N. C. Dryden* and *A. R. Taylor* for appellant.

(1) The facts in evidence sustain the verdict. The plaintiff's injuries were directly caused by the negligence of John Tracy whilst engaged in directing and controlling the business of the defendant, or a department thereof, and the defendant is, therefore, liable. *Brothers v. Carter*, 52 Mo. 372 ; *Gormly v. Vulcan Co.*, 61 Mo. 492; *McGowan v. Railroad*, 61 Mo. 532; *Dowling v. Allen*, 74 Mo. 13; *Malone v. Hathaway*, 64 N. Y. 9. (2) Nor does it make any difference as to defendant's liability that the negligence of the agent that occasioned the injury *was the personal conduct of the agent.* Even if the master (or the vice-principal) at the time of committing the act of negligence be working with the injured servant, still they are not fellow servants, and the master is liable. *Ashwith v. Stanwix*, 3 El. & El. 701 ; *Gormly v. Vulcan Works*, 61 Mo. 495; *McGowan v. Railroad*, 61 Mo. 528 ; Shearman & Redf. on Neg., sec. 102. (3) The petition is good, it sets forth that the injury was caused by the negligence of defendant's agent. (4) The verdict should not be disturbed as being excessive. *Frick v. Railroad*, 75 Mo. 592.

*Fagg & Hatch* and *T. F. McDearmon* for respondent.

(1) The petition did not state a cause of action, because it shows that John Tracy and Michael Fitzgerald, whose negligence, it is averred, occasioned the injury to appellant, and appellant were at the time all employes of respondent, engaged in a common employment of loading a wrecked car on to a wrecking train, and makes only the general averment, that said Tracy was one of the controlling officers of defendant's said railroad, to-wit: the road master, without any statement of facts showing that the duties and authority of such road master were

such as to make him a vice-principal or *alter ego* of the appellant. 2 Thompson on Neg., 1026, 1028 and 1050; Wood on M. & S., 809; *McGowan v. Railroad*, 61 Mo. 528; *Scott v. Robards*, 67 Mo. 289; *Harper v. Railroad*, 47 Mo. 567; *Waldhier v. Railroad*, 71 Mo. 514; *Lawler v. Railroad*, 62 Me. 463; *Leduke v. Railroad*, 4 Mo. App. 485. (2) The court should have sustained defendant's demurrer to the evidence. *Nolan v. Shickle*, 3 Mo. App. 300; *Smith v. Harkness*, 3 Mo. App. 585; *Lindsay v. Mfg. Co.*, 4 Mo. App. 570. (3) The court committed error in giving plaintiff's first instruction. *Cooper v. Ord*, 60 Mo. 420; *Summer v. McCray*, 60 Mo. 493; *Wells v. Halpin*, 59 Mo. 92; *Brothers v. Carter*, 52 Mo. 372. (4) Plaintiff's instruction number three was wrong, for it makes the liability of defendant rest entirely upon the negligence of a "superior" co-employe, without defining the authority of such employe, or how or by whom the defendant could be guilty of negligence. *Marshall v. Schricker*, 63 Mo. 372; *Brothers v. Carter*, 52 Mo. 372; *McGowan v. Railroad*, 61 Mo. 528; *Harper v. Railroad*, 47 Mo. 567. (5) Instruction number nine, given by the court on its own motion, was erroneous. *Goetz v. Railroad*, 50 Mo. 473; *Henschen v. O'Bannon*, 56 Mo. 289. (6) Instructions number five, six, seven and eight, offered by respondent, should have been given, for they correctly declared the law, viz. : that before liability can be fixed on defendant, the testimony must prove that at the time of the negligence complained of, the servant whose negligence caused the injury must have been in discharge of some absolute or implied duty which the master owed to the servant, and the injury complained of must have resulted from the negligent discharge of such duty. *Daubert v. Pickel et al.*, 4 Mo. App. 590; *Murphy v. Railroad*, 4 Mo. App. 565; *Rains v. Railroad*, 71 Mo. 164; *Marshall v. Schricker*, 63 Mo. 308; *Gormley v. Vulcan Iron Works*, 61 Mo. 492; *Crispin v. Babbitt*, 81 N. Y. 520; *McCasker v. Railroad*, 84 N. Y. 77; *Lee v.*

*Detroit Bridge Co.*, 62 Mo. 565; *McGowan v. Railroad*, 61 Mo. 528; *Gibson v. Railroad*, 46 Mo. 163; *Rohback v. Railroad*, 43 Mo. 187; *McDermott v. Railroad*, 30 Mo. 115; *Lawler v. Railroad*, 62 Me. 463; *Blake v. Railroad*, 70 Me. 60.

RAY, J.—This was an action for damages for an in·jury alleged to have been done to plaintiff by defendant and its employes while engaged in loading a wrecked car upon a wrecking train of defendant. The action was commenced in the Lincoln circuit court, and afterwards transferred to that of St. Charles, where there was a verdict and judgment for plaintiff for ten thousand dollars, from which the defendant appealed to the St. Louis court of appeals, where the judgment of the circuit court was reversed and the cause remanded, from which the plaintiff appealed to this court.

The case is reported in 11 Mo. App. 574, where the general facts of the case appear, except that the record shows the extent and nature of the powers, duties, and jurisdiction of Tracy, as road master of defendant, more fully than appears by the opinion. The controlling question in the case, and upon which it was made to turn in the court of appeals, is whether the plaintiff and said Tracy were fellow servants in the transaction in which the injury was received, or whether said Tracy in said transaction acted as vice principal or *alter ego* of the defendant company. The court of appeals in effect held that the plaintiff and said Tracy were fellow servants, and that it did not appear that the injury complained of arose from any negligence of Tracy's in the matter of employing hands, or in any matter in which he replaced the master, or in any of the business in which he was vice-principal or *alter ego* of the master, and that plaintiff could not, therefore, recover, and for that reason reversed the judgment of the trial court and remanded the cause, and the propriety of this ruling is now the

question before us. The record shows not only that said Tracy was road master of defendant's road, with power to employ and discharge hands, but, also, that as such road master he had jurisdiction over the road bed and track of defendant throughout its entire line ; that his duties were to keep road bed, track, cattle guards, and fencing, in repair; that he had authority to employ and discharge section foremen, foremen of construction and wrecking trains, bridge watchmen, and, also, all men and laborers in his department; that his authority and jurisdiction extended alike to laborers, section foremen, foremen of construction or wrecking trains engaged in the work of clearing away or removing a wreck from the road bed or track, or any special foreman engaged in the special work of clearing away such a wreck.

The record also shows that in August, 1879, a supply train of defendant's cars, consisting of three box and three flat cars, had been wrecked on defendant's road, near Foley station, and the evidence on the part of the plaintiff tended to show that the plaintiff at the time of the injury complained of was working in defendant's employ as a laborer under Michael Fitzgerald, an agent and servant of defendant, who was superintending, or bossing, the body of laborers, of whom the plaintiff was one ; that plaintiff was acting as a laborer under the direct supervision, direction, and control, of John Tracy, who was defendant's road master, and as such had control of the road bed and track of defendant's entire line, with the powers, duties and jurisdiction heretofore stated in that behalf; that said Fitzgerald was section and construction foreman of defendant, and was assisting said "Tracy in superintending plaintiff and other laborers in removing the wreck and loading a flat car," whose wheels and trucks had been broken off, upon a wrecking train, both of which were owned by defendant, and being controlled by defendant's agents. The wrecking train was composed of an engine and flat cars, and

had been cut in two, some of the cars attached to the engine being south of the wrecked flat car, and other cars standing still north of the wrecked car. The flat, or wrecked, car had been lifted upon the track of defendant's road when the train was cut in two and the north end of the wrecked car had been lifted up and placed on the first car in the wrecking train north of the wrecked car, and the other laborers and plaintiff, under the control and supervision of Tracy and Fitzgerald, were attempting to place the south end of the wrecked car on the first car of the wrecking train, immediately south of the wrecked car, so that the first car on the south might be pushed under the wrecked car. This wrecked car was held up above the level of the first flat car south by levers resting on the floor of the first flat car south, the north ends of which levers extending a few inches under the south end of the wrecked car, and while the wrecked car was held up by the levers plaintiff was ordered by Fitzgerald and Tracy to go under the wrecked car and push out one of the levers. Plaintiff obeyed the order, and whilst pushing at the lever, Tracy, intending to signal the engineer to move the engine north and thus force the flat car on which the levers were resting under the wrecked car, by carelessness and mistake signaled the engineer to move south, in consequence of which the engine was moved south and thereby drew the flat car and levers from under the wrecked car and caused the same to fall on plaintiff, crushing and crippling him for life. The testimony on the part of the defendant, on the contrary, tended to show that Tracy gave the right signal, but that the engineer, by mistake and carelessness, moved the engine south instead of north, thus causing the accident. On this point the testimony is conflicting as to what signal Tracy gave, but all agree that if he gave the signal the plaintiff's witnesses say he gave, he gave the wrong signal, caused the cars to move the wrong way, and thus occasioned the accident and injury in question, and so the jury found.

The material instructions given and refused in the cause are set out in the opinion of the court of appeals, and are as follows :

"Those given for the plaintiff are two in number, as follows :

"1.   If the jury find, from the evidence, that one John Tracy was the road master of defendant's railroad, and as such road master was the superintendent for the defendant of the work of removing and loading up the wreck in question, and had entire control and charge thereof, with power to employ the section foreman and section hands, and that the plaintiff was subject to his orders and directions, then the jury are instructed that said Tracy was not a fellow servant with the plaintiff, and that said Tracy's acts and conduct in connection with said work were, and are, the acts and conduct of the defendant, so far as this case is concerned.

"2.   If the jury believe, from the evidence, that the plaintiff, while employed by defendant as a section hand, on or about the fifteenth day of August, 1879, in the discharge of his duty as such section hand, was ordered by his superior to step under the wrecked car and push out a certain lever, and that in the discharge of said duty, and in obedience to said order, plaintiff stepped under said car, and while engaged in attempting to carry out said order, the defendant, through negligence or mistake, and without warning to plaintiff, gave to the person in charge of the engine, a signal to move said engine and the cars attached to it southward, when the proper signal would have been to move the engine and the cars attached to it northward, and that in obedience to said signal the person in charge of the engine moved said engine and cars attached to it, southward, and that in consequence thereof said wrecked car fell upon and injured the plaintiff, the verdict must be for the plaintiff.

"To the giving of which instructions by the court, the defendant at the time excepted.

" Three were given for the defendant, as follows:

"1.   If the jurors believe, from the evidence, that at the time the plaintiff was injured, he was an employe of the defendant, and engaged with a number of other men in loading a wrecked train on a flat car, attached to an engine on defendant's track, and that John Tracy, defendant's road master, gave a signal to the engineer in charge of the engine, to move his engine northward, and that the engineer, instead of moving his engine northward, moved southwardly, and that the plaintiff's injury was caused by the southward movement of the engine and the cars thereto attached, the plaintiff cannot recover, and they must find for the defendant.

"2.   Even though the jury may believe, from the evidence, that plaintiff's injury was caused by the southward movement of the train by the engineer in charge, in obedience to an order of John Tracy, defendant's road master, so to do; yet, if they also believe, from the evidence, that said engineer had reasonable grounds to believe that this was a wrong signal, and that obedience to the signal would cause damage or injury, the plaintiff cannot recover, and the finding must be for the defendant.

"3.   If the jury believe, from the evidence, that prior to the happening of the accident which caused the injury to plaintiff, defendant's road master, John Tracy, gave the men employed in loading the wrecked car on another flat car warning that they must get out of the way, that he was going to move the train, or words to that effect, and that said warning was given in sufficient time, before the movement of said train, for said men to get out of the way, and loud enough for the men to hear said warning; and shall further believe that plaintiff, in the exercise of reasonable care, could have heard said warning, and failed to get out of the way, then the defendant is not liable in this action, and the verdict should be for the defendant, unless the jury further find that

said Tracy saw the plaintiff was in danger in time to have prevented the injury, and failed to make proper precautions to prevent said injury.

"The court gave the following instruction upon its own motion:

"9.   The court instructs the jury that a servant of a corporation who is injured by the misconduct or negligence of his fellow servant, can maintain no action against the master for such injury, and that this rule applies in all cases, without regard to the degree of subordination in which the different servants or agents may be placed with reference to each other, and if the jury find, from the evidence, that plaintiff, Tracy and Fitzgerald, were, at the time of the injury complained of, all employes of defendant, in the service of the defendant, then the verdict of the jury must be for defendant, unless the jury should also find and believe, from the evidence, that the road master, Tracy, had sole charge and control of the work as superintendent thereof, with power to employ the hands employed, and that the plaintiff was, at the time, subject to his order, and that the injury complained of was caused by his (the said Tracy's) negligence.

"Defendants asked the court to instruct the jury, 'that if plaintiff, and Tracy and Fitzgerald, were fellow servants of defendant, all engaged at a common employment at the time of the accident, and the injury was caused by Tracy's negligence in giving a wrong signal, defendant is not liable;' and, also, 'that if Tracy was road master of defendant, with authority to employ and discharge hands, yet, unless plaintiff was injured by some negligence of Tracy in the employment of unfit men, or the providing of unsafe appliances, the verdict must be for defendant.'

"These declarations of law were refused."

The court of appeals held that instruction number two, given for plaintiff, was erroneous and unwarranted by

any evidence in the case, and that the instructions asked by the defendant and set out in the course of its opinion, as refused, should have been given. The case at bar, in all its essential features and principles, is identical with that of *Moore v. The Wabash, St. Louis & Pacific Railway Co.*, 85 Mo. 588. In that case this court, per Henry, C. J., had occasion to consider and review this whole question of fellow servants in an elaborate opinion, and the ruling in that case must be accepted as decisive of this. That was an action to recover damages for an injury sustained by the plaintiff therein, while in the employ of that defendant as a car repairer. The defendant in that case, it seems, kept a local car shop at Stansbury (its general car shops being elsewhere and under a general superintendent thereof, named Buck), and had in its employ a foreman of car repairers, named Kesler, who had sole charge and control of hands employed to repair cars. At that shop the plaintiff was employed as a car repairer, and was ordered by said foreman to repair the drawhead of one of the freight cars of defendant standing on a side track, under a promise from said foreman that he would protect him from danger and injury while so employed in making said repairs, and prevent any train or engine from coming on said side track while so employed, but that through the negligence and carelessness of said foreman, an engine of defendant was permitted to come in upon said side track and drive with great force against said car under which said plaintiff was so at work, whereby plaintiff's right arm was caught and crushed between said cars, etc. In treating of that case the court use this language: "If we may venture a general proposition on the subject, it is that all are fellow servants who are engaged in the prosecution of the same common work, under the direction and management of the master himself, or of some servant, placed by the master over them. If a person employ another

to perform a duty which he would have to discharge if another were not employed to do it for him, such person as to that service stands in the master's stead with relation to other persons. * * * The person who had control of the work and the men engaged in it directing how, when and where it should be done, represented in those matters the company itself. It was the duty, a contractual obligation of the company, to provide for the safety of the men at work in repairing the cars. The company devolved that duty upon the person who represented it in conducting, ordering and managing the work and men engaged in it. * * * The foreman, in what he had to do for the company, did not represent himself. Except as the agent of the company, he had no interest in the repairs ordered. He did none of the manual labor in repairing the car, but for the company gave such orders and directions to the car repairers as he thought proper. That the foreman was an inferior servant to Buck (who had a general control and management of car repairs anywhere along the line of the road) does not determine that the foreman was a fellow servant of plaintiff. * * * Buck, the general superintendent of car repairs, was not a fellow servant of plaintiff, and could not have been so regarded, if he, instead of Kestler, had been present and given the order and made the alleged promise to protect plaintiff in obeying that order, and if, by authority of the company, Kestler was placed there to do what fell within the line of Buck's duty, did he not in respect to that matter stand in the same relation to the company as Buck himself, and if Buck had personally done what it is alleged Kestler did, could the company have successfully defended the action on the ground that Buck and plaintiff were fellow servants? We recognize the principle that one may act in the dual character of a representative of a master and as a fellow servant. If it had been the duty of the foreman in this case to assist when necessary in the manual work of repairing the car, in addition to the other duties of super-

intending, controlling, and directing such work, and he had gone under the car with plaintiff to assist in repairing the car, and by some negligent or unskillful act, while so engaged, injured the plaintiff, the latter could not have recovered without proof of facts which entitle one to recover when injured in consequence of the negligence or unskillfulness of a fellow servant. Under the circumstances proved in this case, we think that plaintiff and Kestler were not fellow servants."

In the case at bar, as has been seen, Tracy, whose negligence and carelessness in giving signals to the engineer occasioned the injury in question, was not at the time engaged or assisting in the manual work of removing said wreck from the road bed and track of defendant, or in loading said wrecked car upon said wrecking train, nor does it appear to have been his duty, as road master, so to do, but was engaged as such in superintending, directing and controlling said laborers, including plaintiff, in said work, and in that particular was in the line of his duty as road master of defendant, and under the authority of said case of *Moore v. Wabash, St. Louis & Pacific Railway Co., supra*, said Tracy and plaintiff were not fellow servants, but that Tracy, in the transaction in which the injury in question was received, represented the master, and in that behalf was acting as vice-principal, or *alter ego*, and that his negligence, in that particular, was the negligence of the defendant, for which it is liable. Various other questions were raised in the progress of the trial, and suggested and argued in briefs of counsel, which we have not overlooked, but we have not deemed them material to the proper disposition of the case and will not be further noticed.

The question we have considered was raised at every stage of the proceeding: First, by way of objection to the reception of any evidence at the trial; second, by way of demurrer to plaintiff's evidence; and third, by way of instruction; and manifestly was, and is, the principal and controlling question in the cause.

For these reasons the court of appeals erred in its said rulings, and its said judgment for that cause is reversed and the cause remanded to that court with directions to enter up its judgment affirming that of the circuit court. All concur.