TABLER v. THE HANNIBAL & ST. JOSEPH RAILROAD
COMPANY, *Appellant.*

1. **Master and Servant**: APPLIANCES FOR SERVANT: NEGLIGENCE. It is not the duty of the master to furnish for his servant's use, absolutely safe appliances.

2. ——: ——: ——. It is sufficient that they are reasonably safe and fit for the designed use. In other words, the duty of the master is to use all reasonable care in procuring implements to be used, and in keeping them in good order and repair.

3. ——: ——: INSTRUCTION.. In an action against a railroad for personal injuries, where recovery is sought on the alleged negligence of defendant in coupling cars, which lacked a drawhead, with a switch rope, an instruction is erroneous which makes plaintiff's recovery depend upon the fact that the use of a rope made the coupling more unsafe than the use of a chain.

4. ——: ——: ——. The question to be determined was, not whether one appliance was safer than the other, but whether the rope was a reasonably safe coupling.

5. ——: ——. It was improper for the court to rule, as a matter of law, that in the use of the rope the railroad company did not exercise reasonable care.

6. **Negligence**: WHEN QUESTION OF FACT. Where, from the facts found or agreed upon, the question of negligence is one about which reasonable minds may differ, it should be left to the jury to make the deduction from all the circumstances, and to determine the ultimate fact of negligence.

7. ——. Whether the use of a switch rope was or was not a risk incident to plaintiff's service, was a question for the jury, and an instruction to the jury, that he did not make his contract with reference to any dangers arising from the use of the switch rope for coupling was erroneous.

8. **Vice-Principal.** A master mechanic and wreckmaster held not to be a fellow-servant with plaintiff, a bridge carpenter. (Following *Moore v. Railroad,* 85 Mo. 588, and *Hoke v. Railroad,* 88 Mo. 360).

9. **An Instruction** should not be given on a charge of negligence where there is no evidence to support it.

| | |
|---|---|
| 93 | 79 |
| 31a | 581 |
| 93 | 79 |
| 98 | 71 |
| 35a | 110 |
| 93 | 79 |
| 38a | 247 |
| 93 | 79 |
| 102 | 551 |
| 93 | 79 |
| 103 | 252 |
| 93 | 79 |
| 109 | 356 |
| 112 | 52 |
| 93 | 79 |
| 114 | 557 |
| 116 | 466 |
| 93 | 79 |
| 121 | 659 |
| 124 | 245 |
| 58a | 631 |
| 93 | 79 |
| 75a | 45 |
| 93 | 79 |
| 146 | 282 |
| 147 | 186 |
| 93 | 79 |
| 153 | 396 |
| 153 | 404 |
| 93 | 79 |
| 167 | 112 |
| 93 | 79 |
| 172 | 2 64 |
| 96a | 6 369 |

*Appeal from Livingston Circuit Court.*—HON. JAMES M. DAVIS, Judge.

REVERSED AND REMANDED.

*G. W. Easley* for appellant.

(1)   Plaintiff cannot recover because the derrick was placed in the centre of the train.   He knew its position and voluntarily proceeded on the journey after such knowledge. *Hayden v. Manufacturing Co.,* 29 Conn. 548; *Hudleston v. Lowell,* 102 Mass. 585; *Kroyn v. Railroad,* 32 Ia. 361; *Devitt v. Railroad,* 50 Mo. 305; *Smith v. Railroad,* 69 Mo. 32.   (2) The act of placing the derrick car in the center of the train was the act of a fellow-servant and not the act of the master, and for this reason plaintiff cannot recover on that ground.   (3) The petition does not charge that the use of the rope for coupling was improper.   But if it bears such construction there can be no recovery on that charge.   If a chain was the proper appliance for coupling, the defendant had discharged its duty in furnishing the train, because the evidence shows there was one upon the car.   The defendant cannot be made liable because fellow-servants of the plaintiff failed to use the appliances furnished.   (4) Even if Cartter represented the company, the defendant is not necessarily liable.   He testified that he generally directed the use of a switch rope in place of a chain because the former was safer. (5)   The question was, not whether the master might have provided better machinery, but whether that employed was suitable and proper for the business.   Wood on Master and Servant, 692; *Wonder v. Railroad,* 32 Md. 411.   (6) The second and third instructions given for plaintiff improperly declared the law.   (7) The instructions refused for defendant should have been given.

*Strong & Mosman* also for appellant.

(1) Plaintiff cannot recover on the ground that the derrick car was negligently placed in the center of the train. Its position was not a cause, but a mere condition in the chain of events. Wharton's Neg., secs. 324, 303; *Henry v. Railroad*, 75 Mo. 295; *Marble v. Worcester*, 4 Gray, 491; *Wood v. Railroad*, 51 Wis. 201; *Harlan v. Railroad*, 65 Mo. 25. (2) There was no evidence on which to base an instruction on the relative safety of a chain and a switch rope. The law has not adopted the chain as the standard coupling for railroad cars, nor does it declare that any other appliance used by the master in lieu of a chain shall afford the same degree of safety that a chain would. (3) There is no implied warranty on the part of the master that the machinery furnished by him is safe for use. At most there is only an implied undertaking that he would exercise ordinary care to make them reasonably safe, and keep them so. *Railroad v. Love*, 10 Ind. 554; *Railroad v. Froech*, 68 Ill. 545; *Noyes v. Smith*, 28 Ver. 59; *Wright v. Railroad*, 25 N. Y. 562. (4) The whole duty of a master is fulfilled if he exercise ordinary care to see that the machinery and appliances furnished for the servants' use are reasonably safe. *Railroad v. Barber*, 5 Ohio St. 564; *Davis v. Railroad*, 20 Mich. 105; Woods' Master and Servant, sec. 411; *Smith v. Railroad*, 69 Mo. 36; *Warner v. Railroad*, 39 N. Y. 471; *Porter v. Railroad*, 71 Mo. 767; *Siela v. Railroad*, 82 Mo. 435; *Covey v. Railroad*, 86 Mo. 635; *Railroad v. Adams*, 3 West Rep. 391; *Burke v. Wetherbee*, 98 N. Y. 562. (5) The negligence in adjusting the rope, if any, was that of a fellow-servant and defendant is not liable. *Blessing v. Railroad*, 77 Mo. 410.

*S. P. Huston* for respondent.

(1) The second instruction given for respondent is a correct exposition of the law of the case. *Porter v. Railroad*, 71 Mo. 72. (2) Respondent's third instruction was correct. Where the vice-principal orders the servant to use an appliance somewhat defective, the condition of which is known to such vice-principal, such order is an assurance that it is reasonably safe, and the servant may act on such order. *Miller v. Railroad*, 12 Fed. Rep. 600; Wood on Master and Servant, secs. 387-8; *Patterson v. Railroad*, 76 Pa. St. 389; *Flike v. Railroad*, 53 N. Y. 549; *Clayards v. Dethrick*, 12 Q. B. 442; *Snow v. Railroad*, 8 Allen, 411; *Railroad v. Ogden*, 3 Col. 499. (3) The evidence all shows that the respondent was a common laborer, whose actions were completely controlled by Cartter. The fourth instruction for respondent is the same as one given and approved in *Porter v. Railroad*, 71 Mo. 66. (4) Appellant's first refused instruction was properly refused. The proper making up of the train devolved on the master, and his delegate in that respect represented the train. *Moore v. Railroad*, 17 Eng. & Am. R. R. Cases, 531; *Railroad v. Foot*, 17 Wallace, 553. (5) The refusal of the sixth instruction asked by appellant was not wrong. The statute required only a general verdict on the issues.

BLACK, J.—The plaintiff, a bridge carpenter, in the employ of the defendant, brought this suit to recover damages for injuries received under the following circumstances : A passenger train was wrecked at Bevier station, at two o'clock, on the morning of the first of March, 1881. The defendant caused a wrecking and relief train to be made up at Brookfield, a station west of Bevier; this train, composed of an engine, flat cars, a derrick car, caboose, and a passenger coach, all coupled together in the order named, started for the scene of the wreck at four o'clock of the same morning, with physi-

cians, the plaintiff, and other persons on board. As the train passed over Brush creek, the boom of the derrick, and perhaps the mast, caught in the bridge timbers, and pulled the bridge down. The caboose in which the plaintiff was riding went down with the bridge. Several passengers were killed and the plaintiff received the injuries of which he complains. The tool car lodged on the east pier of the bridge, and the derrick car crossed and fell over the dump, one hundred and fifty feet beyond. The arch-bars of the rear truck of the derrick car were broken ; this car had been repaired on the day before the disaster by the plaintiff and other carpenters. The drawhead in the forward end, which had been out for ten or more days, had not yet been put in place ; so that, on this occasion, the car was attached to the next forward car by means of a switch rope. In other respects the car appears to have been in good repair ; and it was admitted that the bridge was in good condition.

The evidence for the plaintiff tends to show that a chain had been before used to make the coupling ; that one was used on this occasion when the train was made up, but that the rope was substituted therefor by the order of Mr. Cartter, the master carpenter and wreckmaster ; that a rope is unfit for such use ; and that the derrick car, being without a drawhead, should have been placed in the rear of the train, and the boom turned to the rear. The boom projected forward and was held in place by grab-chains. For the defendant, the evidence is, that a chain had never been used to make the coupling, and that a rope is better and safer than a chain for such use.

One witness for the plaintiff says he saw a hook in a bridge tie after the train had been wrecked, and from this, and the circumstances that the rope coupling lengthened out so that it had to be, as was taken up at a station before reaching the bridge, the conclu-

sion was sought to be drawn that the loose end of the rope fell from the car and the hook thereon caught in the bridge tie, and caused the wreck. But the defendant produced evidence to the effect that the hook found in the tie came from a rope used in removing the *débris* from the creek, and not from the rope used as a coupling.

The wreckmaster knew the derrick car was without a drawhead, and so did the plaintiff ; but the evidence is, that plaintiff did not know that a rope had been used to make the coupling. On the evidence, the theory of the defendant seems to be that the arch-bars of the truck to the derrick car broke and threw that car into the bridge timbers ; and that the truck was without any known or visible defect.

The second instruction for the plaintiff declares that, in entering the service of the defendant, the plaintiff "only assumed the ordinary risks and dangers of such employment, and did not assume, or contract with reference to, any risks or dangers arising or resulting from, or occasioned by, the use of a switch rope in place of a chain in coupling its derrick car in the wrecking train ; and if the jury believe, from the evidence, that the use of such switch rope rendered such coupling more unsafe or dangerous than if a chain had been used for such coupling, and that the plaintiff did not know of the use by defendant of such switch rope, at the time he took passage on said train, and that the injuries to plaintiff were caused or brought about by such unsafe coupling, they will find for plaintiff; provided, they further find that such switch rope was substituted by order of A. J. Cartter, and that he had charge of the bridge and wrecking department of the defendant, with power to hire and discharge the men in his department, and to direct with what material such coupling should be made."

1. By this instruction the liability of the defendant is made to flow from the fact that the use of a rope is

more dangerous than a chain. It is not the duty of the defendant to furnish absolutely safe appliances. It is sufficient that the master furnish appliances that are reasonably safe, and are fit for the designed use. In other words, the duty of the master is to use all reasonable care in procuring the implements to be used and in keeping them in good order and repair. *Porter v. Railroad*, 71 Mo. 66; *Siela v. Railroad*, 82 Mo. 435. Here it appears to be conceded by the plaintiff that a chain would have been a suitable and proper coupling. A chain is then taken as a standard, and the liability of defendant is made to depend upon the fact that the use of a rope rendered the coupling more unsafe than the use of a chain. It is plain that such a method of arriving at the question of defendant's liability is in conflict with the rule of the defendant's duty before stated. The question to be determined is, not whether the one appliance is safer than the other, but whether the rope was a reasonably safe coupling. Negligence does not necessarily arise from the proof of the superior merits of the chain. There may have been no negligence in the use of either, though one may have been better than the other.

2. Again, the question of the defendant's negligence, or what is the same thing, want of care in furnishing an appliance suitable for the intended use, is not submitted to the jury for its determination; but is decided by the court as a question of law upon the relative merits of the two methods of making the coupling. We agree that it is the province of the jury to find the facts and of the court to declare the law on the facts as found. In some cases, the question of negligence may be determined by the court on the facts found or admitted; in others, the question must be submitted to the jury, and this, too, though the detailed facts are not disputed. Thus, for one voluntarily, and not to avoid any threatened danger, to jump from a train of

cars while in rapid motion, is negligence ; but for one to step from a car to a station, while the car is moving, may or may not be negligence, and the question is then one for the jury. *Leslie v. Railroad*, 88 Mo. 50, and cas. cit. Where, from the facts found or agreed upon, the question of negligence is one about which reasonable minds may differ, it should be left to the jury to make the deduction from all the circumstances, to determine the ultimate fact. *Norton v. Ittner*, 56 Mo. 351. The car being without a drawhead, it became the duty of the defendant to use all reasonable or ordinary care in furnishing a substitute ; but it cannot be said, as a matter of law, that in the use of the rope there was a want of such care. The sixth instruction, given at the request of the defendant, goes far to relieve the plaintiff's second instruction of some of the objectionable features, for it declares that before the plaintiff can recover on these issues, he must show that the derrick car was negligently and carelessly attached to the car ahead of it by means of a rope with a large hook attached to it, still we are of the opinion that the jury were left to understand that it was, as a matter of law, negligence in the defendant to use a rope, if a chain would have been safer.

3. The plaintiff's second instruction, it will be seen, asserts the abstract proposition that he did not make his contract of employment with reference to any dangers arising from the use of a switch rope for a coupling ; and in this there was also error. It is a well-settled principle of law that the servant, in entering the employment of another, assumes all the risks ordinarily incident to the business in which he engages, with a few exceptions, not necessary to be mentioned here. It may be conceded that these are the only risks which he does assume. But the error of this instruction is, that it assumes that the use of a switch rope created an extraordinary hazard. There is nothing in the case to justify this assumption. Whether the risk was or was not one

incident to the business, was a question of fact for the jury to pass upon.

4. The wrecking train was under the general supervision and control of a conductor, but that does not make Cartter, the master mechanic and wreckmaster, a fellow-servant with the plaintiff. Cartter had full control of the men in his department, with powers incident to the position he occupied, and it is said he had the power to direct with what material the coupling should be made. In the orders given within the scope of his authority, he represented the company. This is so as to the order to substitute a rope for a chain, if such be a fact, and as to the orders given when the train stopped, and the slack in the rope was taken up. The fact that some employe, other than the plaintiff, executed the orders, does not make them any the less the acts of the principal. The performance of such an order, as it was given, does not deprive plaintiff of a remedy for an injury caused by the agent. That Cartter was the agent of the defendant, in respect of the giving of these directions, follows from what was said in *Moore v. Railroad*, 85 Mo. 588, and *Hoke v. Railroad*, 88 Mo. 360.

5. There is no evidence in the case, as it is before us, that the derrick car was decayed in its timbers when used on the occasion in question, and for this reason instructions based upon that theory should have been refused. Many other questions are insisted upon by the defendant for a reversal, but they are complicated with a mass of instructions given at its request, and of which it cannot complain. Some of these instructions go so far as to point out what the plaintiff must show to recover on issues which were abandoned by the plaintiff, for they are not brought forward as grounds of recovery in his instructions. As we are satisfied this case must assume a more defined shape on a new trial, the instructions will not be further pursued.

The judgment is reversed, and the cause remanded for new trial. All concur.