JOHN L. ROBARDS, Appellant, v. CORNELIUS MURPHY
et al., Respondents.

### St. Louis Court of Appeals, April 29, 1898.

1. **Instruction:** NEGLIGENCE: COMMENTING ON EVIDENCE. An instruction which comments on the evidence should be refused by the trial court.

2. ———: ———. An instruction which covers the whole case and submits the issue of negligence or no negligence properly to the jury is unobjectionable.

3. ———: ———: NEGLIGENCE PER SE: FACTS IN CASE. Whether the act of a party standing midway of his wagon bed, instead of taking his place on the wagon seat to drive and control his team, the team being a gentle one, was an act of negligence, admits of more than one view, and is a question about which different minds might reasonably draw different conclusions, and can not therefore be pronounced by the court to be negligence *per se*.

*Appeal from the Hannibal Court of Common Pleas.*
HON. REUBEN F. ROY, Judge.

AFFIRMED.

JOHN L. ROBARDS for appellant.

It is the province and the duty of the court to tell the jury whether or not a given state of facts constitutes negligence. Ravenscraft v. R'y, 27 Mo. App. 617–623; Goodwin v. R'y, 75 Mo. 73; Buswell Law Per. Inj., No. 93; Seehorn v. Hall, 130 Mo. 257–262; Glass v. Glevin, 80 Mo. 297; Belhenland v. Tenson, 114 U. S. 355; 1 Thompson on Trials, No. 1162; Yarnall v. R'y, 75 Mo. 575. If it was prudent to furnish lines, driver's seat, foot board and brakes, how can it be otherwise than negligence to refuse to use them. The peculiar construction of that modern style of vehicle necessi-

tates the use, for ordinary safety, of the appliances built therein. That was the judgment of the manufacturer and of the trade, and the court erred in refusing testimony to explain the proper use of the driver's seat. Where the evidence is all one way, uncontroverted, and tends to prove the issue, and there is no question as to the credibility of the witness, the court should determine the whole case as a question of law. Boland v. R'y, 36 Mo. 484; Fields v. R'y, 80 Mo. 203; Barton v. R'y, 52 Mo. 253; Berry v. R'y, 124 Mo. 223.

GEORGE M. HARRISON for respondent.

In many cases where the facts are undisputed, the question is one of law to be passed upon by the court, but where they are disputed, or admit of different constructions or inferences, the question should be left to the jury. Norton v. Ittner, 56 Mo. 351. In suit for damages against a street railway company, where it appeared that a lad of seventeen years, and of sound mind, jumped or stepped from the car while in rapid motion, it was held improper to instruct the jury, that such action *per se* constituted negligence in law on the part of the boy. The question of negligence in such case should be left to the jury. Wyatt v. R'y, 55 Mo. 485. Where, from the facts found or agreed upon, the question of negligence is one about which reasonable minds may differ, it should be left to the jury to make the deduction from all the circumstances, and to determine the ultimate fact of negligence. Table v. R. R., 93 Mo. 79. That whether, in a certain act or action, the defendant exercised ordinary care under the circumstances is always one for the jury where there is any evidence produced. This principle is sustained by an innumerable number of decisions.''

"Even though the facts are undisputed, it is for the jury, and not for the judge, to determine whether proper care was given, or whether they establish negligence." 16 Am. and Eng. Ency. of Law, p. 465, n. 4, and case cited therein. The respondents, in conclusion, say that the question of negligence was properly submitted to the jury, under the instruction given by the court, and the jury having found the issue for the defendants—respondents herein—the verdict should not be disturbed.

BLAND, P. J.—In the month of December, 1893, the respondents were retail grocery merchants in the city of Hannibal, Missouri. They used a two-horse spring wagon and team, driven by Arch Leonard, for the purpose of delivering goods to their customers.

At the same date appellant was the owner of a two-story brick business house with plate glass windows, on the corner of Main street and Broadway in said city. On the night of December 18, 1890, the respondents' team, while in charge of Leonard, the driver, became frightened and ran against and into appellant's plate glass window and damaged the same by breaking it. Appellant brought suit before a justice of the peace to recover this damage, alleging negligence and carelessness on the part of Leonard, the driver, resulting in the damage to his property. The case went from the justice's court by appeal to the Hannibal court of common pleas, where it was tried the second time, resulting in a judgment for respondents. After unsuccessful motions for new trial, Robards took his appeal to this court. The testimony of the driver as to the occurrence is as follows: "I am 21 years old; live in Hannibal, Missouri; was in August, 1893, employed by the defendants, Murphy & Lampton, who have a grocery store, to drive their horses and

TESTIMONY.

delivery wagon. The team was gentle and the wagon was a light spring delivery wagon, with springs under each over the axles. The bed was three feet above the ground and a foot and one half above the axles. The seat was built across the forward end, and the foot board was in front of the wagon; the brakes were near and operated with the driver's foot when sitting in the driver's seat. When I left the grocery store on Saturday evening, Nov. 18th, 1893, to deliver groceries for Murphy & Lampton, I was seated in the driver's seat with my feet on the foot board. I could reach the brakes with my foot, and rode that way to their customer, John Russell, at S. E. corner of Seventh and Lyon streets. When I left Russell's I was standing up in the wagon. I got into the wagon back of the seat and started the horses in a trot up to Seventh street on Lyon. It was dark. I was standing up in the spring delivery wagon, middle way between the seat and the end gate, four feet back of the seat and four feet from the rear gate, with the lines in my hands, when I saw a small boy close to the off horse on the crossing of Seventh and Lyon streets. The horses were turning on the Seventh street crossing. I don't think he said anything, but he threw up his hand and like to run into the off horse, causing him to lunge west; that jerked the wagon forward and me back one step; then the near horse jumped and that threw me over the end gate of the wagon. I caught on the end gate with my legs locked on it, with the lines taut in my hands. I held my head off the ground and was carried that way but not pulling on the lines, and the horses going in a fast trot about fifty feet when the wheel struck a rock and I fell to the ground on my head and shoulders and the lines came loose from my hands after the wagon bounced over the rock, and that started the horses faster. They turned down Broad-

way, and next I saw them near S. E. corner of Main street and Broadway. I took the horses, and some person said they ran into and broke the plate glass window and cut a fellow's head. I had hold on the lines tight when I was thrown over the tail gate of the wagon. It was between six and seven in the evening. I have been working with horses ever since I was eight or ten years old. If the horses were restive and I wanted to check them I would use the brake. If they were about to run away I would use the brake if I thought of it. When the first horse shied it jerked me back a step, and when the second horse shied that threw me over the end gate of the wagon and I caught with my legs. The wagon did not turn over."

Guy Hendricks, a witness for appellant, testified that he was on the corner of Main Street and Broadway the night of the accident and in plain view of the appellant's plate glass window that was broken; that he saw the team of horses with the wagon running down Broadway at full speed; no one was in the wagon; that the team went to make the turn onto Main Street, but were going so fast they ran over the pavement onto the plate glass on southeast corner of Main and Broadway and crushed it. It was conceded by respondents that the damage done to the glass was $36. The court of its own motion gave the following instruction: "If the jury find from the evidence in the case that the driver, Leonard, while in the service of the defendants and while in the performance of his duties as such driver, in returning from delivering goods to the customers of the defendants was standing up in the defendant's delivery wagon in the rear seat, and that the horses, attached to said wagon, shied suddenly by reason of the action of a boy in the street, and that said Leonard, by the said movement of said horses, was thrown from the said wagon and lost control of said horses, and that

Robards v. Murphy.

by reason of said Leonard's losing control of said horses, the said horses ran away and ran into and broke the plate glass in the window of plaintiff's building, and if the jury further find that the act of the defendants' said driver in standing up in the position aforesaid while driving said horses was such an act as a person using ordinary care and caution and prudence would not have done under all the facts and circumstances in evidence, and if the jury further find that the said Leonard fell from said wagon and lost control of said horses as a result of the act of said Leonard in standing up in said wagon as aforesaid, and that as a further result of said act of said Leonard, the said horses ran away and ran into and broke said glass, then the verdict should be for the plaintiff for the sum of $36. If the jury fail to find the facts as above stated, the verdict should be for defendants."

INSTRUCTION.

To the giving of which appellant objected and excepted and moved the court to give another and different instruction, which the court refused to do. The instruction asked by appellant comments upon the evidence, and for that, if for no other reason, was properly refused. The instruction given covered the whole case; submitted the issue of negligence or no negligence properly to the jury, and is in our view unobjectionable. The appellant's contention is that the court should have instructed the jury, that there was negligence as a matter of law; that the facts prove negligence *per se*. Whether the act of Leonard, in standing midway of his wagon bed, instead of taking his place on the wagon seat to drive and control his team—the team being a gentle one—was an act of negligence, admits of more than one view, and is a question about which different minds might reasonably draw different conclusions, and can not therefore be pronounced by the courts to be negligence *per se*. Norton v. Ittner 56 Mo. 351; Wyatt v. R. R., 55 Mo.

485; Tabler v. R. R., 93 Mo. 79; Barry v. R. R., 98 Mo. loc. cit. 71. Discovering no reversible error in the record, the judgment is affirmed. All concur.