## PETTY v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant*.

1. **Railroad**: ROAD CROSSING: RINGING BELL, ETC. A railroad is guilty of negligence in not ringing the bell, or sounding the whistle of its locomotive at a distance of eighty rods from a road crossing.

2. ——— : ——— : ——— : CONTRIBUTORY NEGLIGENCE. Although one is injured by reason of the failure of the servants of the railroad to comply with the statutory requirement as to ringing the bell and sounding the whistle of its locomotive, he cannot recover if his own negligence directly contributed to the injury.

3. **Contributory Negligence, When a Question for the Jury.** When the undisputed facts relied on to establish contributory negligence are such as may, in the judgment of sensible men, lead to different conclusions thereon, the question should be submitted to the jury.

4. **Railroad Crossing**: TRAVELER. Negligence is not imputable to one for attempting to drive over a railroad crossing without stopping and looking for a train, when by doing so he could not have seen the train which occasioned the injury.

5. ——— : QUESTION FOR THE JURY. Whether or not the deceased, by stopping and listening, could have heard the train, was, under the circumstances of this case, a question for the jury.

6. ———. One approaching a railroad crossing has a right to presume that the railroad will obey the law in notifying him of the approach of its train by ringing its bell or sounding its whistle, when within a quarter of a mile of the crossing.

7. **Contributory Negligence.** Contributory negligence is a matter of defence, and need not be alleged or proved by the plaintiff.

*Appeal from Clinton Circuit Court.*—HON. GEORGE W. DUNN, Judge.

AFFIRMED.

*Smith & Krauthoff* for appellant.

(1) The uncontradicted evidence shows that if de-

ceased had looked (certainly if he had done so when within fifty yards, or less, of the track), he could have seen the train for a distance which increased from fifty yards to forty-two rods, as he approached the track, and that if he had stopped and listened he could have heard the train at least a half a mile distant. Under these circumstances the plaintiff could not recover. *Hixson v. Ry.*, 80 Mo. 335 ; *Allyn v. Ry.*, 105 Mass. 77 ; *Railroad Co. v. Miller*, 25 Mich. 274. (2) The proof of absence of contributory negligence was an essential element of plaintiff's case. *Adams v. Carliss*, 21 Pick. 146 ; *Carsley v. White*, 21 Pick. 254 ; *Lucas v. Ry.*, 6 Gray, 64 ; 8 Allen, 137 ; 14 Allen, 429 ; 100 Mass. 208 ; 133 Mass. 507 ; *Parks v. Obrien*, 23 Conn. 339 ; *Merrill v. Hampden*, 26 Me. 234 ; *Hyde v. Jamaica*, 27 Vt. 443 ; *Railroad Co. v. Gregory*, 58 Ill. 272 ; *Railway Co. v. Brannegan*, 75 Ind. 490 ; *Hubbard v. Mason City*, 60 Ia. 400 ; *Vicksburg v. Hennessey*, 54 Miss. 391 ; *Owen v. Ry.*, 88 N. C. 502 ; *Moore v. Shreveport*, 3 La. An. 645 ; *Walsh v. Ry.*, 10 Ore. ——; *Brahan v. May*, 17 Ga. 136 ; 4 McLean, 333 ; 2 Woodb. & M. 345 ; *Railroad v. Van Steinbur*, 17 Mich. 99 ; *Harlow v. Humonston*, 6 Cow. 189 ; 19 Wend. 399 ; 6 Hill, 592 ; Abbot's Trial Evid. 596 ; 1 Best on Evid., sec. 266. (3) All the instructions given for plaintiff totally ignore the element of contributory negligence, and are defective in that regard. *Gilson v. Ry.*, 76 Mo. 282.

*Thomas E. Turney* also for appellant.

(1) The only negligence on the part of defendant's servants alleged, or attempted to be proved, was their failure to give the signals when eighty rods distant from the crossing. Although this is negligence it is not such negligence as will relieve the injured party from the consequences of his own contributory negligence. *Harlan v. Ry.*, 64 Mo. 480 ; *Fletcher v. Ry.*, 64 Mo. 484 ; *Zim-*

*merman v. Ry.*, 71 Mo. 476; *Henze v. Ry.*, 71 Mo. 636; *Park v. Ry.*, 72 Mo. 169; *Kelley v. Ry.*, 75 Mo. 138: *Lenix v. Ry.*, 76 Mo. 86.    (2) The deceased was guilty of such contributory negligence, in failing to look or listen before attempting to make the crossing, as to preclude plaintiff's recovery.    *Harlan v. Ry.*, 64 Mo. 483; *Ry. v. McDamerill*, 87 Ill. 450; *Week v. Ry.*, 38 Ohio St. 632; *Tully v. Ry.*, 134 Mass. 499.

*W. H. Haynes* for respondent.

(1) The evidence on part of plaintiff was sufficient to warrant the submission of the case to the jury. (2) The statutory requirements of blowing the whistle and ringing the bell not being complied with, the deceased had the right to rely on the presumption that the defendant was obeying the law, and that, therefore, no train was within a quarter of a mile of the crossing at the time of the accident. Cooley on Torts, 664–5; *Johnson v. Ry.*, 77 Mo. 546.    (3) The burden was not on this plaintiff to show the absence of contributory negligence on part of deceased.    19 Amer. Law Review (No. 5) 823.

NORTON, J.—This suit was instituted by plaintiff to recover damages for the killing of her husband on a public road, by reason of the negligence of defendant in failing to ring its bell or sound a whistle at the distance of eighty rods from said crossing. The answer was a general denial, and on the trial plaintiff had judgment, from which defendant has appealed, and assigned as the chief ground of error the action of the court in refusing to instruct the jury that, under the evidence, plaintiff could not recover.

In order to a fair consideration of the question pre-

sented, we give all the evidence offered in the case, which is as follows:

The plaintiff, to sustain the issues on her part, offered evidence as follows:

Susan Petty testified as follows: "I am the plaintiff in this cause. My husband's name was John J. Petty; he died September 13, 1879; he was at home the morning of that day, and was brought home dead that night; he went to mill that day with his wagon and team; several persons came with his body to our home; he was my husband at the time he was killed."

Mr. Hathaway, being introduced on the part of plaintiff, testified as follows: "I lived about eight miles from Stewartsville, in Clinton county. I knew deceased when I saw him; saw him shortly after he was killed; his body was near defendant's railroad track on the thirteenth of September, 1879; he was lying about thirty feet from the crossing and about four feet from the track, and was entirely dead; the top part of his head was mashed, and part of his nose was taken off; the crossing was a public road crossing across the railroad track. Part of his wagon was on each side of the railroad track. The mules which were to the wheels of the wagon were killed. This was about eight o'clock, P. M. I saw no train at that time, but shortly before saw train on defendant's railroad pass going west; when it passed the crossing I was about one-fourth of a mile south of the track, and about one-half mile east of the crossing; I heard the train whistle twice; did not hear it oftener; I could not tell how far the train was from the crossing when it whistled; it sounded like it was right close to the crossing, but could not say definitely how far away. I did not hear the bell ring." Cross-examined: "I was not acquainted with deceased, but knew him when I saw him. He lived about half a mile from the crossing; I am acquainted with the crossing; I think there was a board there erected by the railroad company,

but am not positive whether it was there at that time or not. The night was an ordinarily still night. I was one quarter of a mile south of the track, and one-half mile east of the crossing at the time of the accident. I heard the train plainly; I heard the whistle only twice. I think deceased was in the habit of crossing the railroad at that place, hauling hay, etc. On the east side of the crossing is quite a high bank, and coming from the east a person cannot see the road until they get close to it. I know where the ringing post on the east side of the crossing is; I measured the distance from it to the crossing; it is forty-two rods and four feet east of crossing. I was traveling west when I heard the train. I was on a road running parallel with the railroad and a quarter of a mile south of it."

H. B. Scoville, introduced on part of plaintiff, testified as follows. "I live in Clinton county, and was acquainted with the deceased. On the thirteenth of September, 1879, I had been south of Stewartsville, and was on my way home; when I got within two hundred yards of the crossing on the east, and about seventy-five yards south of railroad track, the train going west passed me; when it came opposite the ringing post I heard three strokes of the bell, and as the rear car passed out of sight through the cut in the track, I heard two sharp whistles, and immediately thereafter a sound as if the train had struck something; I then heard the train backing. When I got to the crossing I saw something lying near the track and some men with it. I jumped over the fence and asked what was the matter; the train men told me they had run into a wagon and team. I saw Petty lying there dead. When they rang the bell they were at the ringing post; they whistled afterwards. I have measured the ground from the crossing to a post eighty rods distant east; they did not ring the bell at that distance; no bell rang from that point to the

crossing, except three strokes at ringing post; when the whistle sounded the engine could not have been more than sixty yards east of the crossing; in but a moment after, I heard the collision. The nearest point west of the crossing where they can see a train in crossing, is two hundred yards; a man at this point could not reach the crossing before the train came; it is about two hundred yards from the crossing to the rise in the ground from which the train can be seen; there is a cut in the railroad just east of the crossing that would obscure a train from a man in the flat for about two hundred yards. I measured the distance from the crossing to the ringing post with a tape line; it is just forty-two rods and four feet east of the crossing. The accident occurred at a public crossing in this county. The train was a passenger train going west, and was due at Stewartsville at eight o'clock, P. M.; it was about on time; there was a headlight on the train burning brightly. The road deceased was traveling before reaching the crossing runs parallel with the railroad track for about one-fourth of a mile; at the west end it is about one-eighth of a mile distant from the track, and gradually nears the track until it turns abruptly south to the crossing; at this point it is about fifty feet distant from the track; at that point the headlight could not be seen more than fifty yards off, the railroad just east of the crossing running through a cut, and a hill or rise in the ground intervenes; this cut is forty rods long and ten or twelve feet deep; a man in the road would be some lower than the railroad track. There is a depression or flat in the road by which deceased approached about one hundred yards wide; just before you get to the point at which the road turns south; the road then inclines up to the crossing; at a point on the road, about twenty-five feet south of the track, you could see the headlight a distance of sixty yards; at a point ten or fifteen feet

distant you could see it seventy-five yards, and when on the track you could see it about to the ringing post. Before one gets to the depression in the road he could see the headlight about one-fourth of a mile down the track, east of the crossing. There is nothing between this point and a grove half a mile off, to obstruct the view ; for very nearly a half a mile, before entering the cut, the headlight could be seen by one on the road and west of the depression or flat. The night was a calm, pleasant night ; the train could be heard distinctly half a mile off ; I must have heard it a mile off ; I was on foot. Petty was traveling with a wagon on which was a hay frame, with two mules at the wheel and two horses in the lead. There was a board at the crossing erected by the company, on the north side of the railroad ; it is on two posts, about ten or twelve feet from the ground— is about sixteen feet long and about sixteen inches wide, white ground and large black letters on it, as follows: ' Railroad Crossing, look out for the cars.' Petty, I know, had been living there since the spring before, not quite three-fourths of a mile away from the crossing; have seen him cross there before. If he had stopped his team and listened he would have heard the train in time to avoid the accident. The train men said they must hurry up as they were a little behind time, or something worse would happen. Petty was about thirty years old. I think his hearing was good, as was also his eye-sight."

W. B. Hemple, introduced on the part of plaintiff, testified as follows : " I knew Petty, the deceased, for three or four years ; he lived about three-fourths of a mile from me during that time ; he was a good driver, or rather a first-class teamster ; he was a man of ordinary care and prudence ; he lived not quite three-fourths of a mile from the crossing and used it a good deal ; he was well-acquainted with the crossing and with

railroads in every respect, as he told me he was raised near them ; the crossing had a board over it with letters, ' look out for the cars.' The night of the accident was a quiet one—some wind blowing. Deceased was about thirty or thirty-five years old, and his hearing and eyesight were both good so far as I know. The wind was blowing quite a gale from the west, and the train was going west.''

This was all the evidence on part of plaintiff.

The defendant then offered Joseph Conant, who testified as follows : " I am a locomotive engineer in the employ of the defendant; was in charge of the locomotive when the accident sued for happened. I whistled at the ringing post three times and the fireman rang the bell, but whether he continued to ring until the crossing was reached, I don't remember. The accident occurred about eight o'clock, P. M.; we were about three minutes late, and were running at the rate of twenty-five miles an hour, which is the schedule time between Easton and Stewartsville, where the accident occurred ; the headlight was burning brightly at the time. When about seventy-five or eighty feet from the crossing I first saw the deceased, he was about fifteen feet from the track, and his horses were in a trot approaching the crossing. I did everything in my power to save him ; I shut off steam, reversed the engine and applied the air-brakes. The night was tolerably still ; the noise of the train could be heard half a mile easily. I whistled three times in succession ; a whistle can be heard a mile. The team of deceased was trotting along at a lively gait, not running, but trotting fast, when I saw them ; they did not stop until they were struck ; the engine was seventy-five or eighty feet from the team when I first saw it.''

Henry B. Iba, introduced on part of defendant, testified as follows : " I am a boot and shoe maker, and postmaster at Easton, Missouri. I am acquainted with

the crossing at which deceased was killed ; three weeks ago I was at the crossing at a point ten or fifteen feet from the track, and on the north side of track ; at that point a train could be seen from sixty to eighty rods east of the crossing, some distance beyond the ringing post. The eight o'clock, P. M., train came from the east while I was there, and I tested it in that way. The evening I was there was a pleasant one, but the wind was blowing some from the west ; I could hear the noise of the train when approaching at least two miles ; I could hear it distinctly when one mile away ; I could see the headlight some distance beyond the ringing post ; was at crossing at time stated at defendant's request ; Lithgow, attorney for defendant, got me to go ; was there for the purpose of looking and listening for the eight o'clock, P. M., train. The bell and whistle could be heard eighty rods. There is a depression or flat in the traveled road about one hundred yards wide ; it widens where the road turns south to the crossing ; from that point it widens to the crossing ; it is only while in this depression that a train cannot be seen by one in the road."

Mr. Miller, introduced by defendant, testified as follows : "I keep a hotel in Easton. I know the crossing at which the accident occurred. I was there about two weeks ago, at defendant's request ; I got there about ten or twenty minutes before the eight o'clock, P. M., train coming west ; I was sitting in my spring wagon twenty or twenty-five feet north of crossing when the train approached from the east ; a little wind was blowing from the west. I heard the train when it was two or three miles distant ; I mean the rumble of the train ; I know it was that distance from the time it was coming, and the whistle for the crossings. While I was in the depression in the road I could see no train. When the train whistled I started my team and drove across the crossing ; got two or three times the length of my team south of the track when the train reached the crossing ;

it was running very fast, can't say how fast; if train had whistled when one-fourth of a mile away I would have had more time to cross; it whistled at the ringing post; when a man is ten or fifteen feet from the crossing on the north side of the track, he can see the headlight one hundred and twenty yards east of the crossing, but when back of that he can't see anything."

Jesse Ren, introduced by defendant, testified as follows: "I know the crossing at which deceased was killed; was there seven or eight days ago; went at defendant's request; I went alone; while I was there the eight o'clock, P. M., passenger train came from the east; it came very fast, being behind time; I stood about six feet from the track on the north side; from this point I could see the headlight quite a distance east of the ringing post; I heard the train when it was a mile and a half distant distinctly; at the corner of the fence where the road turns south to the crossing the train can't be seen by a man standing on the third plank of the fence more than seventy feet from the crossing; I ran to this point after the train whistled, and tested it in that way."

The evidence above detailed establishes the fact beyond question that defendant disregarded the obligations imposed by law, in not ringing its bell or sounding the whistle of its locomotive in approaching the road crossing at the distance of eighty rods therefrom, and in this respect it was guilty of negligence, as has been repeatedly held by this court. But notwithstanding such negligence on defendant's part, it has been repeatedly held that if the negligence of plaintiff contributed directly to the injury complained of, he could not recover. It is insisted by counsel that under the facts in evidence the question of contributory negligence was one of law, and that the court erred in submitting it to the jury, and we are asked to reverse the judgment on this ground. Where the undisputed facts relied upon to establish

contributory negligence are such "as may in the judgment of sensible men lead to very different conclusions, as to whether they establish contributory negligence or want of care, the jury is the tribunal to determine the question." *Norton v. Ittner*, 56 Mo. 351 ; *Mauerman v. Siemerts*, 71 Mo. 101. Testing the action of the trial court by the rule above indicated, we must hold it to be rightful. The deceased on the night of the accident was driving four horses to a wagon with a hay frame on it. The public road he was traveling runs nearly parallel to the railroad for about one-fourth of a mile. At its west end it is about two hundred yards from the railroad and gradually approaches the same till within fifty feet, when it abruptly turns south, across the railroad track. The deceased was on the road west of the crossing, traveling east, and defendant's train was east of the crossing, traveling west. East of the road crossing there is a cut in the railroad track forty rods long and ten or twelve feet deep. The evidence tends to show that, at a point on the highway two hundred yards from the railroad, a train could have been seen on the railroad for the distance of half a mile. After leaving this point until the point in the highway turning abruptly south, about fifty feet from the crossing, is reached, a train could not be seen on the track, in consequence of a depression in the highway and the cut in the railroad. One witness testifies that at the point where the road turns south it is fifty feet from the railroad, and from there the headlight could not be seen more than fifty yards off; at a point on the road twenty-five feet, the headlight could be seen sixty yards ; at ten or fifteen feet it could be seen seventy-five yards, and when on the track you could see it to the ringing post. One of defendant's witnesses testified that when ten or fifteen feet from the track the headlight could be seen one hundred and twenty yards east of the crossing.

No one witnessed the accident except the engineer,

who testified "that it occurred about eight o'clock, P. M.; we were about three minutes late, running twenty-five miles an hour. * * * When about seventy-five or eighty feet from the crossing, I first saw the deceased; he was about fifteen feet from the track, and his horses were in a trot approaching the crossing; I whistled at the ringing post three times, and the fireman rang the bell, but whether he continued to ring until the crossing was reached, I don't remember." Conceding that the evidence establishes the fact that deceased, when at the distance of two hundred yards from the crossing, could have seen, if he had looked, along the track of defendant's road for half a mile east of the crossing, still if by looking he could not see the train in question, negligence in not looking is not imputable to him, and the other evidence in the case conclusively shows that had he stopped and looked for the train in question he could not have seen it. *Henry v. Railroad*, 71 Mo. 636, at page 640. The evidence shows that the train was running twenty-five miles an hour, or one mile in about two minutes and a half, and that deceased was driving a four horse team, presumably at the rate of three or four miles an hour, or at the rate of a mile in fifteen or twenty minutes, and that both the team and the train reached the crossing at the same time. At the respective rates of speed the train and team were traveling the train, if only a half a mile off, would have reached the crossing before it could have been possible for the team to have reached it. The conclusion is, therefore, inevitable that the train must have been more than half a mile east of the crossing when defendant was on the highway two hundred yards from it, and he could not, therefore, have seen it had he looked.

But it is contended that he could have heard it by stopping and listening. Under the evidence, we think this was a question for the jury. Three witnesses testified, one that he was, on the night of the accident, east

of the crossing, a half a mile east of the crossing, and a fourth of a mile south of the railroad, says he heard the train plainly ; another witness also testified that he was traveling on a road east of the crossing, and seventy-five yards south of the track, that the train could be heard distinctly half a mile, and thinks he heard it one mile ; that it was a pleasant calm night.   Two witnesses testified that, two or three weeks before the trial, at defendant's request, they went to the crossing for the purpose of looking and listening for the train, and that they heard it for more than a mile, one of them saying a little wind was blowing from the west.   Another witness testified that the night of the accident the wind was blowing quite a gale from the west, the train was east of the crossing going west, and deceased was west of the crossing going east.   This evidence was properly submitted to the jury for their determination as to whether the deceased, in the locality he was, with the wind blowing from the west as testified to, with a cut of forty rods in length and ten or twelve feet deep in the railroad, could have heard the train.

But assuming that he could, at the distance of two hundred yards west of the crossing, have heard the rumbling noise of a train, and that in fact he did hear it, it does not follow that he was guilty of negligence in proceeding on his way, and for these reasons :   The rumbling of the train would simply have imparted to him the knowledge of the fact that a train was running somewhere on the track, not whether it was approaching or going away from the crossing.   But conceding that he heard the noise of the train, and that as a prudent man he was bound to know that it was approaching, still it would not be, as a matter of law, negligence for him to proceed on his way, inasmuch as, under such circumstances as are disclosed by the evidence in this case, the deceased might well have concluded that the approaching train was more than eighty rods from

the crossing, and that it was safe for him to proceed on his way, relying upon the presumption that the defendant would not disobey the law, in failing to notify him of its approach by ringing its bell or sounding its whistle when it came within a quarter of a mile of the crossing, to which notice he was by law entitled, and which it was the duty of defendant to give. *Johnson v. Railroad*, 77 Mo. 546. The whistle was neither sounded nor the bell rung till the train was within forty-two rods of the crossing, and when the bell was rung or whistle sounded at that distance, the train could not, according to the. evidence, pass by deceased from the point where he turned south with his team. So that when he heard the bell rung, or the whistle sounded, as he must have done, he had a right to believe that it was sounded at the distance of eighty rods instead of forty rods, and might, as a prudent man, have acted on the belief that he could pass with his team a distance of fifty feet over the crossing, before the train run eighty rods, or the distance of one thousand and thirty-two feet to reach the crossing. Indeed, the evidence of one of defendant's witnesses, who was requested to go to the crossing two weeks before the trial to test what could be seen, heard and done, and who was in a spring wagon, testified that he was twenty or twenty-five feet north of the crossing when the train approached, sitting in his spring wagon ; when the train whistled at the ringing post, he started his team, drove over the crossing, and got two or three lengths of his team south of the track when the train reached the crossing.

We have been cited to a number of cases where it has been held, that under the facts in evidence, the court erred in submitting the question of contributory negligence to the jury, of which the case of *Fletcher v. Railroad*, 64 Mo. 484, is a representative. In that case the plaintiff testified that "if he had looked back he could have seen the train in time to have avoided the accident;

that he neither looked nor listened for it; that he did
not think of it." In nearly, if not all the cases to which
we have been cited, these witnesses of the transaction
who gave affirmative evidence that the plaintiff neither
looked nor listened, when by looking and listening, he
could beyond question have seen and heard the train.
The case before us is more nearly allied to that of
*Buesching v. St. Louis Gas Light Company*, 73 Mo.
219, where it is said that : " The presumption of due care
always obtains in favor of plaintiff in an action to re-
cover damages for an injury sustained by him, through
the alleged negligence of another." It is very analogous
to the case of *Schum v. Pennsylvania Railroad Com-
pany*, 107 Pa. St. 8, where it is said that in an action
against a railroad company for running over and killing
a person at a highway crossing, where there is no witness
of the actual occurrence, the burden is not on the plain-
tiff to disprove negligence on the part of the deceased.
The presumption is that he stopped, looked, and listened
before attempting to cross, as the law required him to
do. A person driving along the highway was killed by a
train moving at great speed, and which gave no signal of
its approach. The road crossed the track at an acute
angle. The view of the track from the road, in the di-
rection from which the train came, was obstructed by
trees and bushes until within about ten yards of the
track, when a clear view of the track could be had for
about fifty yards. In an action against the railroad com-
pany to recover damages, the above facts were proved,
but no witness of the accident was produced. A com-
pulsory non-suit was awarded upon the ground that the
deceased must have been guilty of contributory negli-
gence, and this the court subsequently refused to take
off ; held that this was error, and that the question
whether the deceased had been guilty of contributory
negligence was not within the province of the court to
decide. In the argument before us the point was made,

Petty v. The Hannibal & St. Joseph Railway Co.

and earnestly and ingeniously pressed upon our attention, that as a part of plaintiff's case it should have been averred in the petition, and proved by her on the trial, that deceased was without fault, and not guilty of contributory negligence. It is enough to say of it, that in the case of *Thompson v. Railroad*, 51 Mo. 190, the identical point now presented was made, and the attention of the court, in the briefs of counsel, was called to nearly all the cases which were alluded to in the argument before us, and after full consideration, the doctrine announced by Shearman & Redfield on Negligence was approved, the court holding that contributory negligence was a matter of defence to be proved by the party relying upon it. The doctrine there announced was reiterated in the subsequent case of *Loyd v. Railroad*, 53 Mo. 509, and has since been steadily adhered to, and from which we see no good reason to depart. The case in hand affords another example of the evil results flowing from the disobedience of railroads, in disregarding a statute enacted in the interest of humanity, and for the protection not only of the lives and property of those traveling on trains, but of the citizen and traveler on the highway as well. Its observance is a reasonable requirement, and for its non-observance railroad companies should be held to strict accountability. Where it is not observed and injury results, in an action to recover damages therefor, a clear case of contributory negligence must be established before the courts, as a matter of law, exempt them from liability on that ground.

The questions of facts involved were fairly submitted to the jury by the instructions given, and perceiving no error in the record, the judgment is affirmed. All concur, except Judges Henry and Sherwood, who dissent.