DONOHUE v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

1.  **Practice**: DEMURRER TO EVIDENCE.  A demurrer to the evidence admits the facts the evidence tends to prove, and in passing upon it the court is required to make every inference of fact from the evidence in favor of the party offering it, which the jury might, with any degree of propriety, have inferred in his favor, and if, when viewed in that light, it is insufficient to support a verdict in his favor, the demurrer should be sustained.

2.  **Negligence**: CROSSING RAILROAD TRACK AT PUBLIC CROSSING.  It is settled that ordinary care and prudence require a person who is about to cross a railroad track at a street or public crossing to look and listen for a train, when by looking he could see, and by listening he could hear, an approaching train, and the omission to do either would be such negligence on his part as to prevent a recovery for an injury, provided his perilous condition was not, and could not, by the exercise of ordinary diligence, have been, discovered in time to avoid injuring him.

3.  ———— : ———— : WHEN NOT REQUIRED TO LOOK FOR TRAIN.  Contributory negligence to prevent a recovery cannot be imputed to such person because he did not look for the train when his view in the direction it was approaching was obstructed by a row of houses.

4.  ———— : ———— : STOPPING TO LISTEN.  The deceased, who was attempting to cross the track at a street-crossing, was not guilty of contributory negligence in omitting to stop and listen for the train, it not appearing from the evidence that he could have heard the train had he stopped to listen.

5.  ———— : ———— : ————.  Not seeing the train, nor hearing it, nor the sound of the bell, because none was rung, the deceased had a right to presume that he could pursue his course without danger.

6.  **Question for Jury**: PERSON IN PERIL.  Whether the course adopted by a person, crossing a railroad track, to free himself from the peril in which he was involved by an approaching train, was such as a man of ordinary prudence might, or would, have adopted, is a question for the jury.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Bennett Pike* for appellant.

(1)   The court below committed error in refusing to
sustain the demurrer to the evidence at the close of
plaintiff's testimony. *Harlan v. Railroad*, 65 Mo. 22 ;
*Henze v. Railroad*, 71 Mo. 636 ; *Purl v. Railroad*, 72 Mo.
168 ; *Johnson v. Railroad*, 77 Mo. 551 ; *Turner v. Rail-
road*, 74 Mo. 602 ; *Hixon v. Railroad*, 80 Mo. 335 ; *Carlin
v. Railroad*, 37 Iowa, 316 ; *O'Keefe v. Railroad*, 32 Iowa,
467. (2) The court erred in giving the instructions asked
by plaintiff. *O'Keefe v. Railroad*, 32 Iowa, 467 ; *Rine v.
Railroad*, 88 Mo. 392. (3) The court erred in refusing
to give the instructions asked by the defendant. *John-
son v. Railroad*, 77 Mo. 552 ; *Turner v. Railroad*, 74
Mo. 602. (4) The court erred in giving the instruc-
tions on its own motion. *Railroad v. Ryan*, 80 Ill. 528 ;
*Allyn v. Railroad*, 105 Mass. 77 ; *Benton v. Railroad*,
42 Iowa, 192 ; *Railroad v. Mitchell*, 52 Miss. 808 ; *Gor-
ton v. Railroad*, 45 N. Y. 660 ; *Railroad v. Elliott*, 28
Ohio St. 340 ; *Fletcher v. Railroad*, 64 Mo. 484 ;
*Leduke v. Railroad*, 4 Mo. App. 485 ; *Railroad v. Heil-
eman*, 49 Pa. St. 60 ; *Railroad v. Miller*, 25 Mich. 274.

*A. R. Taylor* and *D. McGowan* for respondent.

(1) There was no legal obligation on the part of the
deceased to keep his eyes fixed on the train up to the
moment of crossing the track, even if his view were free
from obstruction, but, under all the circumstances, the
question whether he was in the exercise of ordinary care
was one of fact for the jury. *Bonnell v. Railroad*, 39
N. J. Law, 189. (2) One in a state of danger will not
be held to that nice discrimination as to his acts which
he might have exercised when uninfluenced by fear.
*Macon v. Davis*, 27 Ga. 113 ; 1 Thompson on Neg. 430.
(3) When a train comes from a direction where it could

not have been seen at the time, it was not incumbent on the person, crossing, to look in that direction. The deceased could not see southward till he passed the row of houses which obstructed his view in that direction. *McGem v. Railroad*, 2 Daly, 76; *Chicago v. Lee*, 87 Ill. 454; *Railroad v. Transfer Co.*, 32 N. J. 95. (4) The deceased, under all the circumstances, not only acted with care and prudence, but with extreme caution. The company, in running their train at such a high rate of speed, through the city and across the public streets, were guilty of gross negligence, and the case was properly submitted to the jury under instructions. *Karle v. Railroad*, 55 Mo. 476; *Railroad v. Dunn*, 78 Ill. 197, 199; *Railroad v. Becker*, 84 Ill. 483; 1 Thompson on Neg. 418, with authorities therein cited. (5) Where a train is run at a rate of speed greater than that prescribed by statute or local ordinances, the negligence of the company is usually characterized as gross. *Karle v. Railroad*, 55 Mo. 476; *Railroad v. Dunn*, 76 Ill. 197 and 199; *Mossoth v. Canal Co.*, 64 N. Y. 524 and 531; 1 Thompson on Negligence, 418, with authorities therein cited. (6) The case was a proper one for the jury. *McGrath v. Railroad*, 63 N. Y. 523; *Baltimore v. Miller*, 29 Md. 252; 1 Thompson on Negligence, 419. (7) If the statutes require the ringing of the bell or the sounding of the whistle at a crossing, whether in country or town, the failure to comply with the law will render the company liable. *Fletcher v. Railroad*, 64 Mo. 484; *Railroad v. Dill*, 22 Ill. 264; *Railroad v. McLean*, 40 Ill. 218; *Railroad v. Bell*, 70 Ill. 102. (8) It is well settled, both in principle and authority, that the municipal authorities in large towns have the right to adopt such ordinances as the one cited, by virtue of their general supervision over the police of their respective jurisdictions. *Merz v. Railroad*, 14 Mo. App. 463; *Whitson v. City*, 3 Ind. 396; *Railroad v. City*, 5 Hill [N. Y.] 209; 13 Mo. App. 589. (9) If the engineer or

managers of the train discovered the negligence of deceased in time, by use of ordinary care, to prevent the injury, and did not make use of such care for the purpose, they are justly charged with recklessness, and cannot rely on the negligence of the plaintiff as a protection. *Brown v. Railroad*, 50 Mo. 461; *Burham v. Railroad*, 56 Mo. 338; *Railroad v. State*, 33 Md. 542 and 554; *Kelly v. Railroad*, 75 Mo. 138.

NORTON, J.—Plaintiff brought this suit in the circuit court of the city of St. Louis, to recover damages for the death of her husband, alleged to have been killed by the negligence of defendant in running its locomotive, without ringing its bell, at a reckless and unlawful rate of speed, over Dorcas street, in said city. Plaintiff obtained judgment which, on appeal to the St. Louis court of appeals, was affirmed *pro forma*, from which an appeal is prosecuted to this court.

At the close of plaintiff's evidence defendant asked an instruction by way of demurrer to it, which was refused, and this action of the court is the first ground of error assigned. A demurrer to the evidence admits the facts the evidence tends to prove, and, in passing upon it, the court is required to make every inference of fact in favor of the party offering the evidence which a jury might, with any degree of propriety, have inferred in his favor, and if, when viewed in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained. *Buesching v. St. Louis Gas Light Co.*, 73 Mo. 219. The evidence in this case shows that defendant had three tracks crossing Dorcas street in the city of St. Louis, one of them being a switch track leading to the car shops, the next one to it being the south-bound track, and designated, by the witnesses, the west track, and the next one to it being the north-bound track, and designated by the witnesses as the east track. The distance between the switch track, and the west or

·south-bound track, was estimated to be from ten to twenty feet, and the distance between the latter track and the east, or north-bound track, was estimated by a majority of the witnesses to be five or six feet, some of them saying it was ten feet.

On the day of the accident, Donohue, the husband of plaintiff, was driving, at a moderate gait, a one-horse spring wagon, going from west to east, on and along said Dorcas street, and on approaching the switch track, his attention was attracted to an engine on the said track to the north of him. He was looking at this engine while driving over the switch track, and until he got on the west track, when he looked south and saw the engine on the east track approaching the crossing, about thirty yards from him, when he stood up, struck his horse, whose forefeet were at the time off the east track, but before the crossing was made the horse and wagon were struck by the engine, and he was instantly killed. The evidence tends to show, and does show, that, Donohue did not stop his wagon, nor look south, till he got on the west track ; it tends, also, to show· that in consequence of the view being obstructed by a row of houses, deceased could not, if he had looked, seen the approach of an engine coming from the south on the east-bound track till he got on the west track, from which point a train approaching from the south could be seen at a distance of two or four blocks, and there was nothing to prevent those managing the train from seeing the perilous condition of deceased.

The following ordinances were also put in evidence :

"25. It shall not be lawful, within the limits of the city of St. Louis, for any car, cars, or locomotive, propelled by steam power, to run at a rate of speed exceeding six miles per hour ; but nothing in this section shall be so construed as to apply to any car, cars, or locomotives, run over the track or tracks, which are

maintained along the river bank between Arsenal street and Elwood street."

"26.   It shall not be lawful, within the limits of the city of St. Louis, for any car, cars, or locomotives, propelled by steam power, to obstruct any street crossing, by standing thereon longer than five minutes; and, when moving, the bell of the engine shall be constantly sounded within said limits, and if any freight car, cars, or locomotives, propelled by steam power, be backing within said limits, a man shall be stationed on top of the car, at the end of the train furtherest from the engine, to give danger signals, and no freight train shall, at any time be moved within the city limits without it be well manned with experienced brakemen at their posts, and who shall be so stationed as to see the danger signals, and hear the signals from the engine. The steam whistles of danger shall in no case be sounded except in giving the usual signals for running trains."

It was shown, by uncontradicted evidence, that the train which killed the deceased was running at a rate of speed of from fifteen to thirty miles an hour without ringing its bell, and the evidence tended to show that south of the crossing where deceased was struck, the track was straight and level, and the persons in charge of the engine had an unobstructed view for from one hundred to three hundred yards, and that there was nothing to hinder them from seeing the perilous condition of the deceased. According to the evidence of some of the witnesses, the speed of the train was not checked till the collision occurred, and by the evidence of others, that it was not checked till in about five feet of deceased. It was testified to by two witnesses that a train running at the rate of fifteen miles an hour could have been stopped, with proper appliances, in fifty feet. Applying the rule laid down in the *Buesching case, supra*, to the above state of facts, we must hold that the demurrer to the evidence was properly overruled.

It is settled that ordinary care and prudence requires a person, who is about to cross a railroad track, at a street or public crossing, to look and listen for a train, when by looking he could see, or by listening he could hear, an approaching train, and the omission to do either would be such negligence on his part as to prevent a recovery for an injury, provided his perilous condition was not, and could not, by the exercise of ordinary diligence, have been discovered in time to avoid injuring him. It is not made to appear in this case that the deceased could have seen the train which killed him till he got upon the west track, and the mere fact of his not looking south till he got on said track, but was looking north at a switch engine on the switch track he was about to cross and did cross, cannot be imputed to him as negligence, for the reason that if he had looked south he could not have seen the train, his view in that direction being cut off by a row of houses. Nor can it be said that he was guilty of contributory negligence in not stopping to listen, it not appearing from the evidence that he could have heard the train had he stopped, but, on the contrary, from the fact sworn to by one of the witnesses, who was standing near the east track forty feet north of Dorcas street, without anything to obstruct the sound, that the train made so little noise that he did not hear it till it was crossing Dorcas street. If the demurrer admits the fact sworn to by this witness, then, under the rule hereinbefore referred to, we must infer that Donohue, had he stopped and listened, could not have heard it, especially so in view of another fact that a row of buildings intervened between him and the train as an obstruction both to sight and sound.

Neither seeing nor hearing a train, nor the sound of a bell, for none was rung, the deceased had a right to presume that he could pursue his course without danger. What is said in the case of *Kennayde v. Railroad*, 45 Mo. 255, may be appropriately applied here. It is there-

said : " The citizen who on a public highway approaches a railway track, and can neither see nor hear any indication of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous. *Ernzt v. Railroad*, 35 N. Y. 9. He has a right to assume that in handling their cars, the railroad company will act with appropriate care ; that the usual signals of approach will be seasonably given, and that the managers of the train will be attentive and vigilant. In *Newson v. Railroad*, 29 N. Y. 390, the rule is stated thus : ' The law will never hold it imprudent in any one to act upon the presumption, that another in his conduct will act in accordance with the rights and duties of both.' In the case of *Gordon v. Railroad*, 40 Barb. 550, it is said : ' A defendant cannot impute a want of vigilance to one injured by his act—as negligence—if that very want of vigilance were the consequence of an omission of duty on the part of the defendant.' " After quoting the above authorities approvingly the court then adds : " In the case at bar the defendant not only misled the deceased by omitting all the usual and customary precautions to notify persons of the pending danger, but it acted in open and flagrant violation of the statute made for the protection of the public. The consequence of the omission was to put the victim off his guard, to disarm his vigilance, and lull him into a false sense of security. When the laws are broken and defied, and homicides are recklessly committed, it is no part of the business of courts to hunt up excuses, or seize upon technicalities for the purpose of shielding the wrongdoers." The case of *Petty v. Railroad*, 88 Mo. 306, is to the same effect.

Nor can we say, as a matter of law, that Donohue, after getting on the west track, and seeing the train thirty steps south of him, when the front feet of his horse were on the east track, was guilty of negligence in

whipping his horse to make the crossing. The peril was then upon him, and presuming, as he might, that the train was being run, not in violation of, but according to, the mandate of the ordinance, at six miles an hour, he, as a prudent man, might well have concluded that to extricate himself from the peril it was safer for him to urge his horse across, than to undertake to turn him around and incur the hazard of bringing his vehicle in contact with the train. At all events the question as to whether the course adopted by him to free himself from the peril surrounding him was such as a man of ordinary prudence might or would have adopted was a question for the jury.

We see no just ground of complaint to the instructions given by the court. The jury were substantially told by them, that, in approaching the crossing, it was the duty of Donohue to stop, look, and listen for a train, and that if he failed to do so he was guilty of such negligence that plaintiff could not recover, unless the jury further found that defendant's agents in charge of the train either saw, or, by the exercise of ordinary care, could have seen, the peril that Donohue was in, in time to have avoided injuring him. The instructions conformed to the theory of the law as laid down in the cases of *Frick v. Railroad,* 75 Mo. 595; *Kelly v. Railroad,* 75 Mo. 138; *Werner v. Railroad,* 81 Mo. 374. In the case last cited it is said: " Counsel indulges in a criticism of the cases in which this court has held that if the negligence of a defendant, which contributed directly to cause the injury, occurred after the danger in which the injured party had placed himself by his own negligence, was, or, by the exercise of reasonable care, might have been, discovered by the defendant in time to have averted the injury, then defendant is liable, however gross the negligence of the injured party may have been in placing himself in such position of danger. Such is the well-established doctrine of this court."

We have been cited to the cases of *Rine v. Railroad*, 88 Mo. 392, and *Neier v. Railroad*, not yet reported, as asserting a different doctrine. This is a misconception. In the case of *Rine v. Railroad*, Rine was a trespasser on the track, and Judge Black, who delivered the opinion, expressly distinguishes the cases of *Frick v. Railroad*, and *Kelly v. Railroad*. In the case of *Neier v. Railroad*, Mrs. Neier, who was in a place of safety, voluntarily put herself before the train after she was fully notified that the train was coming.

No reason is seen for interfering with the judgment, and it is hereby affirmed. All concur except Henry, C. J., and Sherwood, J., who dissent.

### On motion for re-hearing.

NORTON, C. J.—We are asked to grant a re-hearing in this case on the sole ground that there was no evidence to show that the accident did not occur "along the river bank between Arsenal and Elwood streets." It is distinctly alleged in the petition that the place where deceased was killed was not "along the river bank, between Arsenal and Elwood streets," and it is distinctly averred in the answer, and thereby admitted, that deceased "was killed at the time and place in question." Besides this it sufficiently appears from the evidence of witness, Shultz, that Dorcas street crossing, where the injury occured, is not on the river bank. In view of this, and the fact which is plainly inferable from the whole record, that the trial proceeded on an apparently admitted theory, that the place of the injury was not on the bank of the river between Arsenal & Elwood streets, the motion is overruled.