## MAGGIE GROOM, Respondent, v. PATRICK KAVANAGH, Appellant.

### St. Louis Court of Appeals, December 23, 1902.

1. **Damages: NEGLIGENCE.** A defendant is not liable in every event for the damage caused by his runaway team; but his liability depends on whether or not he took ordinary care to prevent it from running away.

2. ——: ——. The fact that a defendant left a team unattended and unhitched on a public street in a city, is evidence of negligence.

3. ——: ——. A foot passenger when crossing a traveled thoroughfare of a city must use ordinary care to avoid injury by horses and vehicles.

4. ——: ——: ORDINARY CARE. Sometimes in order to observe ordinary care, a footman must look or listen, before attempting to cross a street, but he is not required to do so in such an absolute sense that his omission will always and necessarily defeat an action for damages caused by a collision with a horse or vehicle due to the owner's negligence.

5. ——: ——: ——: CONTRIBUTORY NEGLIGENCE. And in the case at bar, it was for the jury to say whether the plaintiff was negligent, and if so, whether that negligence contributed to cause the accident.

6. ——: ——: ——: ——: ACCIDENT: LIABILITY. Defendant is not liable to the plaintiff if the casualty was a pure accident, in no way due to the defendant's carelessness.

7. ——: ——: ——: ——: BURDEN OF PROOF. The burden of proof is on the plaintiff to show the defendant was guilty of negligence which caused plaintiff's injury, and on the defendant to show plaintiff was guilty of contributory negligence.

8. ——: ——: ORDINARY CARE. Ordinary care means the degree of care which would be used by a person of common prudence in similar circumstances.

9. Practice, trial: ERROR: INSTRUCTIONS. It is not error to refuse to give instructions, which had already been given by the court covering the same propositions.

10. ——: ——: TESTIMONY. Where the testimony of several witnesses tends to show that the defendant left his horses unhitched and unheld while his back was turned to them, he knowing they were spirited horses and had previously run away, if plaintiff is injured by being run over by said horses running away, this made a prima facie case to go to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The following instructions were requested by the defendant and refused:

"1. The court instructs the jury that under the pleadings and all the evidence, the plaintiff can not recover in this case and your verdict will be for defendant.

"2. The court instructs the jury that if they believe from the evidence that the plaintiff stepped on the street and in front of said runaway horses without looking or listening, or without trying to prevent coming in contact with them, then your verdict will be for defendant.

"3.    By ordinary care is meant that which a person of common prudence takes of his own concerns, or that degree of care, which men of common prudence exercise about their own affairs; in determining what would be ordinary care in this particular case, reference must be had to the actual state of society, business habits and general usages peculiar to the time and country.    What would be ordinary care and prudence in crossing or attempting to cross a street by one who could not only see but hear, might be negligence in one attempting to do the same thing who could only see but not hear.

"4.    Although you may believe from the evidence that defendant Kavanagh was negligent, as defined in these instructions, still if you further believe that the plaintiff, Maggie Groom, saw, or by the exercise of ordinary care could have seen, the runaway horses of defendant in time to have gotten out of their way or kept out of their way, and on account of her failure to do so was injured, then she was guilty of such contributory negligence as will bar her recovery herein, and you must find for the defendant.

"5.    The jury are further instructed that while it may have been the duty of defendant to have exercised ordinary care and diligence in preventing, or trying to prevent, his said horses from running away, yet a duty also devolves upon the plaintiff.    And, if she saw the horses coming, or might, by looking or listening, have seen or heard them coming, she could have gotten out of their way, or kept out of their way, but did not, then your verdict will be for the defendant.

"6.    The court instructs the jury that if they believe from the evidence that the plaintiff saw the horses approaching or knew of their approach before she got upon the street and in their way, or could have seen said horses by looking, or heard them by listening, then the failure of defendant to observe ordinary care and watchfulness in hitching and guarding his said horses (if a fact) is immaterial, and your verdict will be for defendant."

The following instructions were given at defendant's request:

"A. The court instructs the jury that the defendant was not bound under all circumstances to prevent his horses from running away unless you believe that he failed to exercise that degree of care and prudence which an ordinarily careful and prudent person would have exercised under like circumstances, then your verdict will be for the defendant.

"B. The court instructs the jury that if they believe from the evidence that the injuries of plaintiff were the result of mere accident or casualty, and not of negligence on the part of the defendant, then your verdict will be for the defendant.

"C. Although the jury may believe from the evidence that defendant was guilty of negligence in failing to guard his said horses so as to prevent them from running away, yet if they also believe from the evidence that the plaintiff was also negligent in failing to discover the approach of said horses in time to have kept out of their way, or to have gotten out of their way, if in it, then your verdict will be for the defendant."

The following instructions were given by the court of its own motion:

"D. The court instructs the jury that the plaintiff claims that her injuries were occasioned by the following negligence on the part of the defendant; that is to say: that the defendant negligently left a team of horses owned by him, unhitched and unguarded and negligently permitted them to run away and over plaintiff, by reason of which she was greatly injured.

"These allegations, the defendant has denied in his answer. Defendant has also alleged, by way of an affirmative defense, that whatever injuries plaintiff sustained by his horses were caused in whole or in part by his own contributory negligence.

"The mere fact that the horses ran away and the plaintiff was run over and severely injured do not of themselves make defendant liable in this case. The gist of the action is the charge that the defendant failed to

exercise ordinary care, diligence and watchfulness, thereby causing these injuries. The burden of establishing this charge is upon the plaintiff and if the evidence, bearing on this proposition does not preponderate in favor of the plaintiff, then the jury will find for the defendant.

"By a preponderance of evidence is meant that the evidence in support of the proposition, in your judgment, outweighs that to the contrary. The burden of proving any negligence of the plaintiff or of proving the facts, when under these instructions are defined as constituting such negligence, is upon the defendant to establish the truth of them to your satisfaction by a preponderance of evidence in regard to them.

"E. The court instructs the jury that if you find and believe from the evidence that on the thirtieth day of January, 1902, Dickson, O'Fallon and Twenty-first streets, were open and public streets in the city of St. Louis, and if you further find and believe from the evidence that defendant was on said date, January 30, 1902, the owner, and in charge of a span of horses attached to a sleigh, and that he negligently left said horses standing on Dickson street and walked away from said horses, and that said horses were unhitched, unguarded and unattended, and that said horses ran away and then upon and over plaintiff at the intersection of said Twenty-first and O'Fallon streets, and that plaintiff received the injuries complained of directly thereby, and if you further find and believe from the evidence that the plaintiff was at said time exercising ordinary care for her own protection, then the defendant is liable in this case and your verdict should be for the plaintiff.

"F. If you find and believe from the evidence that the plaintiff was struck by the runaway horses while she was crossing the street, and that she stepped onto the street or crossing and in front of said horses without exercising ordinary care in looking or listening for the approach of horses or vehicles, and if you believe that if she had exercised such ordinary care she could

have seen or heard the team in time to have prevented the collision and gotten away, then your verdict should be for the defendant, although you may believe that he. was guilty of negligence in allowing the team to·run away.

"It is the duty of a person crossing a public street in the city to exercise ordinary care and prudence in avoiding the danger of collision with horses on such street, and you are to determine from all the evidence in the case whether or not the defendant exercised such ordinary care.

"G.   The court instructs the jury that with respect to the allegations of contributory negligence set up in the defendant's answer, the burden of proof rests upon the defendant, that is, the defendant must prove to your satisfaction by a preponderance of evidence that the plaintiff did not exercise ordinary care for her own protection.

"H.   By 'preponderance of evidence' as used in these instructions, is not necessarily meant the greater number of witnesses, but the greater weight of the evidence; that is, that the evidence in support of the proposition to be proved is, in your judgment, of more weight than the evidence against it.

"By 'ordinary care,' as used in these instructions, is meant that degree of care which would be used by a person of ordinary prudence under like or similar circumstances.

"By 'negligence,' as used in these instructions, is meant the absence of ordinary care under the circumstances shown in evidence."

It is unnecessary to copy the instruction on the measure of damages, as no point is made against it.

*T. J. Rowe* and *H. N. Moore* for appellant.

*James J. O'Donohoe* for respondent.

(1)   "Every person has a right to presume that every other person will perform his duty and obey the

law, and it is not to be denounced as negligence for him to assume that he is not exposed to danger which can only come through the disregard of law on the part of another." Moberly v. Railroad, 17 Mo. App. 518. (2) The entire law of this case is embodied in the following cases: Ward v. Steffen, 88 Mo. App. 571; Becker v. Schutte, 85 Mo. App. 57; Jennings v. Schwab, 64 Mo. App. 13; Hall v. Huber, 61 Mo. App. 384.

GOODE, J.—The substance of the case on which plaintiff obtained judgment for fifteen hundred dollars for personal injuries is, that she was struck by a team of runaway horses hitched to a sleigh on one of the public streets of St. Louis and badly hurt. She charges in her petition that defendant carelessly left his team standing on Dickson street without being fastened, hitched, guarded or in any way attended so as to prevent it from running away, and that while plaintiff was passing west over O'Fallon street and in the act of passing from the south to the north side thereof, at or near its intersection with Twenty-first street, said horses and sleigh, on account of being carelessly left by defendant without restraint, ran over her throwing her against the street and sidewalk and permanently injuring her. It is further charged that the horses were wild and subject to take fright and run away and that their disposition in this regard was well known to the defendant.

The testimony for plaintiff tended to establish the allegations of the petition and to show that defendant, who had been sleighriding with a young lady, left the team standing unhitched in front of the gate of her residence with no one holding the reins, while he assisted his companion to alight from the sleigh; that when the horses started to run, defendant was standing between the curbstone and the gate with his back to the horses engaged in conversation with the lady; that the horses were blooded, high-strung animals and had previously run away while defendant was driving them, so that he had knowledge of their wild proclivities.

The team started to run in front of No. 2422 Dickson street and continued until they ran over the plaintiff as she was crossing Twenty-first street at its intersection with O'Fallon. Plaintiff is very dull of hearing and while the sleighbells on the harness were ringing, she might not have heard them on that account.

It seems there is a jog in Twenty-first street where it meets O'Fallon, so that the north end of Twenty-first street starts from O'Fallon somewhat west of the line from which the south end runs into O'Fallon.

Plaintiff's testimony is not clear as to her position on Twenty-first and O'Fallon streets when she was struck by the horses, but tends to prove it was such that she was unable to see north on Twenty-first street, from which direction the team ran on her, because of said jog; hence, she did not look north on Twenty-first street, or looked but slightly, before she attempted to cross, and the team was on her before she had a chance to get out of the way.

The defendant owned the horses and excused their escape as follows: When he drove up to the curb in front of the young lady's house on Dickson street, he got out of the sleigh; and, still holding the lines, assisted her to alight. At the time, to-wit, about seven o'clock on January 30, 1902, the streets and sidewalks of the city were covered with ice and snow, and as the young lady was being assisted from the sleigh by the defendant his foot slipped and he fell to the ground. His fall caused him to jerk the reins of the horses, which alarmed them so that they escaped from his control and ran off.

There was evidence for the defendant tending to prove the plaintiff had an unobstructed view along Twenty-first street to the north before she attempted to cross, and that the jog in the street in no way interfered with her view. There was also testimony that O'Fallon and Twenty-first streets were much used thoroughfares and many vehicles passed along them at the hour of day when this accident happened.

Vol 97 app—24.

Exceptions were saved by the defendant to the court's rulings on the instructions and the correctness of those rulings is the question for determination on this appeal.

The instructions given to the jury show the trial judge thought the rules of law applicable to the case were as follows:

First. That the defendant was not liable in every event for damage caused by his runaway team; but that his liability depended on whether or not he took ordinary care to prevent it from running away.

Second. That if he left it unattended and unhitched on the public street, those facts were evidence of negligence and of consequent liability on his part to persons injured by the horses.

Third. That a foot-passenger when crossing a traveled thoroughfare of a city must use ordinary care to avoid injury by horses and vehicles.

Fourth. That sometimes in order to observe that kind of care, a footman must look or listen, before attempting to cross a street, but that he is not required to do so in such an absolute sense that his omission will always and necessarily defeat an action for damages caused by a collision with a horse or vehicle due to the owner's negligence. In other words, that in some instances, and in the present one, it was for the jury to say whether the plaintiff was negligent, and if so whether that negligence contributed to cause the accident.

Fifth. That the defendant is not liable to the plaintiff if the casualty was a pure accident, in no way due to the defendant's carelessness.

Sixth. That the burden of proof was on the plaintiff to show the defendant was guilty of negligence which caused her injury, and on the defendant to show she was guilty of contributory negligence.

Seventh. That ordinary care means the degree of care which would be used by a person of common prudence in similar circumstances.

Those propositions are all sound law and most of them are so trite as to need no support by argument or citations. They were appropriate, too, to the issues in this case wherein all the material facts had to be found from contradictory testimony.

The refused instructions, except the first one which was in the nature of a demurrer to plaintiff's case, were covered by those the court gave, as will be easily seen by a comparison.

In favor of the motion that a nonsuit should have been ordered, appellant's counsel argue that the law requires a person about to cross a city street to always look or listen for approaching horses or vehicles; but that is pushing the rule too far. Circumstances may occur which will excuse a person for omitting to look or listen for trains before going on a railroad track, though the precaution is specially necessary in such instances. Kenney v. Railway, 105 Mo. 270; Jennings v. Id., 112 Mo. 268; Baker v. Id., 122 Mo. 593. Certainly no more care need be taken in crossing a street than in crossing a railway, and the duty incumbent on a traveler in either case is to take ordinary care; though this usually requires him to look or listen before venturing on a railway track and may require him to do so before he crosses a street. But various facts must be considered in deciding whether he was negligent if he did not look or listen; such as the quantity of travel on the street and the opportunity to see and hear approaching animals and conveyances.

The facts before us, as testified to by the plaintiff, show it would have been an incorrect charge if the trial court had instructed the jury the plaintiff could not recover because she failed to look or listen for vehicles coming along Twenty-first street from the north before she attempted to pass over the crossing of that street and O'Fallon. She could scarcely hear, so listening would have been useless; and in fact she did listen to the extent she could. She swore that from the direction she took in crossing it was impossible to see

along Twenty-first street because a house obstructed her view. These facts, if true, proved she was not guilty of contributory negligence in omitting to look or listen. Baker v. Railway, supra; Johnson v. Id., 77 Mo. 547; Donohue v. Id., 91 Mo. 357; Petty v. Id., 88 Mo. 306. That being the law, her testimony was to be weighed by the jury against the testimony given by witnesses to the contrary. The decision in Baker v. Savage, 45 N. Y. 191, is not necessarily opposed to ours, because all the testimony in that case showed the plaintiff therein could have seen the wagon which hurt her, by a mere glance, and in time to get out of the way. What this plaintiff was bound to do was to use ordinary care in going over the crossing, and the jury were so told. They were instructed that if they found the plaintiff stepped on to the crossing and in front of the horses without exercising ordinary care in looking and listening for the approach of horses or vehicles, and further found that if she had exercised such ordinary care she could have seen or heard the team in time to prevent a collision, the verdict should be for the defendant. That charge fully submitted the defense, unless we hold the plaintiff was bound to look and listen whether she could see or hear or not, or hold that her positive testimony that she could not see was of no weight; and of course we will do neither.

The testimony of several witnesses that the defendant left his horses unhitched and unheld while his back was turned to them, he knowing they were spirited horses and had previously run away, made a prima facie case to go to the jury. Ward v. Steffen, 88 Mo. App. (St. L.) 571; Becker v. Schutte, 85 Mo. App. (K. C.) 57.

All the issues of fact were controverted, and as the jury determined them by the aid of accurate charges, and the trial judge refused to set aside the verdict as being opposed to the weight of the evidence, the judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.